In the Matter of the Application of FRANK J. McCABE, Appellant, against JOHN R. VOORHIS et al., Constituting the Board of Elections of the City of New York, Respondents.

Constitutional law — New York city — elections — referendum — mandamus — legislation subject to approval of electors valid — citizen may by mandamus compel public officer to perform public duty — authority of board of elections of city of New York relative to submission on referendum of local law — must determine whether law is properly transmitted for submission — may by mandamus be compelled to perform that duty — proper for courts to consider whether proposed local law is in conflict with Constitution or controlling act of Legislature where it is far reaching in effect and test of its validity after approval would be difficult — test of validity of local law — defect in title — objectionable as superseding State legislation without compliance with City Home Rule Law — when good may not be severed from bad — practical application of words of statute.

1. The practice of adopting legislation to become operative only upon its approval by a majority of the qualified electors of the specified locality to which it applies, has the sanction of this court.

26

2. A citizen and elector has a sufficient interest to warrant him in making application for an order of mandamus to compel the performance by a public officer of a public duty. (*People ex rel. Daley* v. *Rice*, 129 N. Y. 449, followed; *Schieffelin* v. *Komfort*, 212 N. Y. 520, distinguished.)

3. The authority of the board of elections of the city of New York, relative to the submission of a local law on referendum to the electors of the city, is limited to the submission of such laws as are adopted by the municipal assembly pursuant to the City Home Rule Law (L. 1924, ch. 363) and it must determine for itself whether the law is in form a local law and in fact properly transmitted to it for submission. If it is not such on its face, the board may reject the proposition, and, if it disregards its duty and proceeds to submit a defective local law to be voted on by the electors, a citizen and elector may obtain a mandamus order requiring it to perform its duty.

4. While, ordinarily, courts will not decide the abstract question whether a law, on its face adopted pursuant to the City Home Rule Law, is in conflict with the Constitution or some controlling act of the Legislature or in excess of the delegated powers of the municipal assembly, the rule is one of prudence rather than of power, and, where the consequences of its adoption are far reaching, involving public interests and vast investments and the bringing it to the test of validity in any actual controversy after its approval by the electors is involved in difficulty, it seems proper for the courts to consider the questions raised.

5. Direct legislation in cities must always rest on some constitutional or statutory grant of power. The test of validity, therefore, of a local law of New York city is whether it has been adopted as such and comes within the powers delegated to the city by the City Home Rule Law.

6. A local law, the purpose of which, as summarized in its title, is " to prevent an increased fare on rapid transit or street surface railways without the approval of a majority of the electors of the city of New York," but which, in fact, prohibits any change in any contract or franchise of any city railroad corporation with respect to preferentials, bonuses or subsidies or obligations to render public services, offends against section 13 of the Home Rule Law and section 16 of article 3 of the State Constitution, which provide that a local law shall embrace but one subject and that shall be expressed in its title.

7. The law in question is also objectionable in that it supersedes State legislation and takes from the board of estimate and apportionment the power conferred upon it by chapter 641 of the Laws of 1925 to give its consent and approval to contracts to effectuate plans of readjustment of transit in the city of New York, without complying

with the requirements of the City Home Rule Law (§ 12, subd. 1) that a local law intended to supersede a provision of an act of the Legislature, which does not in terms and in effect apply to all cities, shall specify the provision intended to be superseded by " reference to chapter number, year of enactment, title of statute, section, subsection or subdivision."

8. Though a portion of the local law might be saved as valid for the reason that the State plan for readjustment applies to subways and rapid transit railways and not to street surface railways, separation of the good from the bad would permit the submission to the voters of but a maimed and worthless thing.

9. A contention that the local law is nothing more than a limitation placed on the mode and manner of giving consent by the local authorities cannot be sustained without disregarding the practical application of the language used.

*Matter of McCabe* v. *Voorhis*, 218 App. Div. 702, reversed.

(Argued October 19, 1926; decided October 22, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered October 14, 1926, which affirmed an order of Special Term denying a motion for a peremptory order of mandamus to compel the board of elections of the city of New York to omit from the ballots for the November election a proposition for the submission of a local law under the purported referendum provisions of the City Home Rule Law.

*Louis Marshall* for appellant. Exclusive power with respect to transit franchises resides in the sovereignty of the State, and the city can exercise no power with respect thereto except such as may have been expressly delegated to it. (*Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185; *People ex rel. Simon* v. *Bradley*, 207 N. Y. 592; *Beekman* v. *Third Avenue R. R. Co.*, 153 N. Y. 144; *People ex rel. N. Y. & N. S. T. Co.* v. *Pub. Serv. Com.*, 175 App. Div. 869; *People ex rel. South Shore T. Co.* v. *Wilcox*, 196 N. Y. 212; *City of New York* v. *Bryan*, 196 N. Y. 158; *Wilcox* v. *McClellan*, 185 N. Y. 9.) The

State has exercised its exclusive power in the provision by general statutes of comprehensive machinery for granting franchises, making contracts and regulating and controlling the whole field of transit, and only limited and specific functions have been delegated to the " local authority." (*Matter of Forty-second St. Spur of Manhattan Ry. Co.*, 216 N. Y. Supp. 2; *People ex rel. R. T. S. Const. Co.* v. *Craven*, 210 N. Y. 443; *Davis* v. *Mayor of New York*, 14 N. Y. 506; *Milhau* v. *Sharp*, 27 N. Y. 611.) The limited and specific functions of the " local authority " were not enlarged, and no power with respect to transit was delegated to the city of New York by the Home Rule Amendment or the City Home Rule Law. (*Brown* v. *City of New York*, 241 N. Y. 96; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *Matter of McAneny* v. *Board of Estimate & Apportionment*, 232 N. Y. 377; *People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367; *McGrath* v. *Grout*, 37 Misc. Rep. 64; 69 App. Div. 314; 171 N. Y. 7; *Schieffelin* v. *Berry*, 217 App. Div. 451; *Halsey* v. *Jewett Dramatic Co.*, 114 App. Div. 423; *Pulitzer* v. *City of New York*, 48 App. Div. 6; *People ex rel. Outwater* v. *Green*, 56 N. Y. 466; *Chase* v. *Lord*, 77 N. Y. 1; *People* v. *New York Catholic Protectory*, 106 N. Y. 604; *East* v. *Brooklyn Heights R. R. Co.*, 195 N. Y. 409.) Local Law No. 16 exceeds the power of the city and in subjecting every important transit adjustment to its provisions directly conflicts with the general statutes of the State. (*Huff* v. *City of New York*, 202 App. Div. 425; *Beekman* v. *Third Avenue R. R. Co.*, 153 N. Y. 144; *Wilcox* v. *McClellan*, 185 N. Y. 9; *Sanborn* v. *Carleton*, 15 Gray, 399; *Barto* v. *Himrod*, 8 N. Y. 483; *People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533; *Cleveland* v. *City of Watertown*, 222 N. Y. 159.) The local law exceeds specific limitations on local legislation in that it bears a false and misleading title which is so framed as to conceal the true nature of its subject-matter. (*Economic Power Co.* v. *Buffalo*, 195 N. Y. 286; *People* v. *Howe*,

177 N. Y. 499; *Bohmer* v. *Haffen,* 161 N. Y. 390; *Parfitt* v. *Furguson,* 159 N. Y. 111; *New York Bridge Co.* v. *Smith,* 148 N. Y. 540; *Johnston* v. *Spicer,* 107 N. Y. 185; *Matter of Sackett Street,* 74 N. Y. 95; *Matter of Greene,* 55 App. Div. 475; 166 N. Y. 485; *First Construction Co.* v. *State of New York,* 221 N. Y. 295; *Matter of Dean,* 230 N. Y. 1; *Gaynor* v. *Village of Port Chester,* 231 N. Y. 451.) Local Law No. 16 of 1925 is illegal on the further ground that it forbids the board of estimate and apportionment to consider any resolution having the purpose or effect specified in the law, unless and until the proposal of such resolution shall have been first submitted to the people of the city upon a referendum " and approval by the affirmative vote of a majority of the qualified voters of such city," whereas sections 15 and 16 of the City Home Rule Law, relating to approval by referendum, require only " the affirmative vote of a majority of the qualified electors of such city voting upon the proposition." (*State ex rel. Quincy, M. & P. R. Co.* v. *Harris,* 96 Mo. 29; *Wells* v. *Ragsdale,* 102 Ga. 53; *Davis* v. *Brown,* 46 W. Va. 716; *Hogg* v. *Baker,* 17 Ky. L. Rep. 577; *State* v. *Cornell,* 53 Neb. 556; *State* v. *Anderson,* 26 Neb. 517.) Mandamus requiring the defendants to disregard the proposition sought to be submitted to the electors of the city of New York at the general election to be held on November 2, 1926, is the proper remedy. (*People ex rel. Conklin* v. *Boyle,* 98 Misc. Rep. 364; 178 App. Div. 908; *People ex rel. Lempp* v. *Board of Elections,* 178 N. Y. Supp. 516; 185 App. Div. 939; 234 N. Y. 633; *Trounstine* v. *Britt,* 212 N. Y. 421; *Matter of Noble,* 34 App. Div. 55; *People ex rel. Noyes* v. *Board of Canvassers,* 126 N. Y. 392; *People ex rel. Nichols* v. *Board of Canvassers,* 129 N. Y. 395; *People ex rel. Daley* v. *Rice,* 129 N. Y. 449; *People ex rel. Hotchkiss* v. *Smith,* 206 N. Y. 231; *Matter of Hopper* v. *Britt,* 203 N. Y. 144; 204 N. Y. 525; *People ex rel. Ferguson* v. *Vroman,* 101 Misc. Rep. 233; 188 App. Div. 914.) The relator, as a citizen, a resident

of the city and State of New York, and a duly qualified and enrolled voter therein, is entitled to invoke the remedy of mandamus. (*People ex rel. Case* v. *Collins*, 19 Wend. 55; *People* v. *Halsey*, 37 N. Y. 346; *Baird* v. *Supervisors, etc.*, 138 N. Y. 95; *People ex rel. Bacon* v. *Northern Central Railway Co.*, 164 N. Y. 289; *People ex rel. Pumpyansky* v. *Keating*, 168 N. Y. 390; *Southern Leasing Co.* v. *Ludwig*, 217 N. Y. 100; *People ex rel. Publicity Leasing Co.* v. *Ludwig*, 218 N. Y. 540; *People ex rel. Swan* v. *Doxsee*, 136 App. Div. 400; 198 N. Y. 605; *People* v. *Ahearn*, 124 App. Div. 840; *People* v. *Swanstrom*, 79 App. Div. 94; *People* v. *Manning*, 37 App. Div. 141; *People* v. *Meakim*, 56 Hun, 626; 123 N. Y. 660.) There is no merit in the contention that, until there has been an election as proposed, the submission to the electorate for its approval or disapproval of Local Law No. 16 of 1925 cannot be interfered with. (*People ex rel. Hotchkiss* v. *Smith*, 206 N. Y. 201.)

*William D. Guthrie* for appellant. Mandamus upon application of an inhabitant is a proper remedy and the present proceeding is not premature. (*Baird* v. *Supervisors, etc.*, 138 N. Y. 95; *People ex rel. Pumpyansky* v. *Keating*, 168 N. Y. 390; *McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377; *People ex rel. Conklin* v. *Boyle*, 98 Misc. Rep. 364; 178 App. Div. 908; *People ex rel. Daley* v. *Rice*, 129 N. Y. 449; *Matter of Noble*, 34 App. Div. 55; *People ex rel. Lempp* v. *Board of Elections*, 178 N. Y. Supp. 516; 185 App. Div. 939; 224 N. Y. 633; *People ex rel. Ferguson* v. *Vroman*, 101 Misc. Rep. 233.) Local Law 16, paragraph 1, attempts to supersede acts of the Legislature in violation of section 12 of the City Home Rule Law. (*Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160; *New York & Brooklyn Saw-Mill & Lumber Co.* v. *City of Brooklyn*, 71 N. Y. 580; *Beekman* v. *Third Ave. R. R. Co.*, 153 N. Y. 144; *Wilcox* v. *McClellan*, 185 N. Y. 9; *Slavin* v. *McGuire*, 205 N. Y. 84; *Olmsted* v. *Meahl*,

219 N. Y. 270; *Brown* v. *City of New York*, 241 N. Y. 96; *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *People ex rel. Plancon* v. *Prendergast*, 219 N. Y. 252; *Matter of Hirshfield* v. *Cook*, 227 N. Y. 297; *Matter of McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377; *Gas & Electric S. Co.* v. *Manhattan & Queens Trac. Corp.*, 266 Fed. Rep. 625.) Local Law 16, paragraph 2, attempts to provide for an initiative proceeding not authorized by the City Home Rule Law, or any other law. (*Mills* v. *Sweeney*, 219 N. Y. 213; *Dallas Railway* v. *Geller*, 114 Tex. 484; *Southwestern Tel. & Tel. Co.* v. *City of Dallas*, 104 Tex. 114; *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265; *Birdsall* v. *Clark*, 73 N. Y. 73; *Phelps* v. *Mayor of New York*, 112 N. Y. 216; *Ontario Knitting Company* v. *State of New York*, 205 N. Y. 409.) Local Law 16 is also invalid because its title neither declares nor adequately suggests its several subject-matters. (*Economic P. & C. Co.* v. *City of Buffalo*, 195 N. Y. 286; *Matter of Application of Paul*, 94 N. Y. 497; *People* v. *Allen*, 42 N. Y. 404; *Matter of City of Rochester* v. *Bloss*, 77 App. Div. 28.)

*Leonard M. Wallstein* for Citizens Union of the City of New York, *amicus curiæ.* The present proceeding is not premature. (*People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533; *Brawner* v. *Supervisors of Elections*, 141 Md. 586; *Elliot* v. *City of Detroit*, 121 Mich. 611.) There is a clear legal right to mandamus if the statute under which the officials propose to act is unconstitutional. (*People ex rel. Hotchkiss* v. *Smith*, 206 N. Y. 231; *People ex rel. Hopper* v. *Britt*, 203 N. Y. 144; *People ex rel. Howard* v. *Board*, 42 App. Div. 510; 160 N. Y. 687.) This local law is beyond the local legislative power in that, introducing the electorate as a body clothed with municipal administrative powers, it purports to change the organization of the city government, a duty (and a corresponding

power) vested solely in the State Legislature by article XII, section 1, of the Constitution. Local Law No. 16 of 1925 is beyond local legislative power, because not within the grant of article XII, section 3. (*Schieffelin v. Mills,* 241 N. Y. 96; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *McAneny* v. *Board of Estimate,* 232 N. Y. 377; *Gubner* v. *McClellan,* 130 App. Div. 716; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *People ex rel. Outwater* v. *Green,* 56 N. Y. 466; *People* v. *Richards,* 108 N. Y. 137; *Matter of Rochester E. R. Co.,* 123 N. Y. 351; *Pulitzer* v. *City of New York,* 48 App. Div. 6; *Halsey* v. *Dramatic Co.,* 114 App. Div. 420; *Louisville & N. R. Co.* v. *Mattley,* 219 U. S. 467; *Texas, etc., R. Co.* v. *Miller,* 221 U. S. 408; *Buffalo, etc., R. Co.* v. *Buffalo, etc., R. Co.,* 111 N. Y. 132.)

*George P. Nicholson, Corporation Counsel* (*Charles L. Craig, Edgar J. Kohler, Arthur J. W. Hilly, Russell Lord Tarbox* and *William E. C. Mayer* of counsel), for respondents. The court has no jurisdiction to entertain the proceeding. (*Matter of Bonnaffe,* 23 N. Y. 169; *Wallace* v. *Swinton,* 64 N. Y. 188; *Pratt* v. *Short,* 79 N. Y. 437; *N. Y. Central & H. R. R. R. Co.* v. *Reusens,* 151 App. Div. 458; *Aultman & Taylor Co.* v. *Syme Co.,* 163 N. Y. 54; *People ex rel. Conklin* v. *Boyle,* 98 Misc. Rep. 364; 178 App. Div. 908; *People ex rel. Bast* v. *Voorhis,* 227 N. Y. 167; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *Matter of Reynolds,* 202 N. Y. 403; *Spies* v. *Byers,* 287 Ill. 627.) The local law is a valid enactment under the authority of the City Home Rule Law and the Home Rule Amendment of the Constitution. (*Sun Printing & Publishing Assn.* v. *Mayor, etc.,* 152 N. Y. 257; *Browne* v. *City of New York,* 241 N. Y. 96; *Matter of International Railway Co.* v. *Rann,* 224 N. Y. 83; *Quinby* v. *Public Service Commission,* 223 N. Y. 244.) The contention that the title of the local law is defective is without force. (*Economic Power, etc., Co.* v. *Buffalo,*

195 N. Y. 286; *People* v. *Howe,* 177 N. Y. 499; *People* v. *Banks,* 67 N. Y. 568; *People* v. *Comrs.,* 47 N. Y. 501; *Prentice* v. *Weston,* 47 Hun, 121; *Wrought Iron Bridge Co.* v. *Attica,* 119 N. Y. 204; *Devlin* v. *New York,* 63 N. Y. 8; *Matter of Department of Public Parks,* 86 N. Y. 437.) The local law does not purport to amend the Rapid Transit Act, the Public Service Commission Law or any other statute than the Greater New York charter. (*International Ry. Co.* v. *Rann,* 224 N. Y. 83; *Quinby* v. *Public Service Commission,* 223 N. Y. 244; *People ex rel. Garrison* v. *Nixon,* 229 N. Y. 575; 229 N. Y. 645; *Admiral Realty Co.* v. *City of N. Y.,* 206 N. Y. 110.)

*John Godfrey Saxe, John F. Collins* and *Edward S. Dore* for Democratic County Committee. McCabe has no grievance; the courts do not decide moot questions. (*Schieffelin* v. *Komfort,* 212 N. Y. 529.) The courts are without jurisdiction to entertain this proceeding for the reason that it is one to supervise and inhibit the regular process of legislation. (*Spies* v. *Byers,* 287 Ill. 627; 122 N. E. Rep. 841.)

POUND, J. The relator, a resident of the city of New York, instituted this proceeding for a peremptory order of mandamus as a duly qualified and enrolled voter or elector therein, to compel the defendants, the board of elections of the city, to omit from the special ballot for the general election on November 2, 1926, a proposition for the submission on referendum to the electors of the city of a local law adopted by the municipal assembly known as Local Law No. 16. The purpose of the law as summarized in the title is " to prevent an increased fare on rapid transit or street surface railways, without the approval of a majority of the electors of the city of New York." The law itself is much broader in its terms and makes it unlawful for the board of estimate and apportionment " to adopt any resolution authorizing, or purporting to authorize any change in any contract or

franchise for the operation of any subway, or rapid transit railway, or street surface railway in the city of New York, the purpose or effect of which is to increase the fare of five (5) cents now provided by law, *or* which grants to any operating company any preferential or bonus, or subsidy, *or releases it from any of its obligations to render the service to the public required by any contract or franchise whatsoever* * * * unless and until the proposal for the adoption of any such resolution shall have been first submitted to the people of the city upon a referendum, and approved by the affirmative vote of a majority of the qualified voters of such city, such referendum to be had at the first general election, after there has been filed with the city clerk at least ninety days prior thereto, a petition signed and acknowledged by qualified voters of such city in number equal to at least fifteen per centum of the total number of votes cast for Governor at the last Gubernatorial election in such city." The act became a law on September 17, 1925, but under the provisions of section 15 of the City Home Rule Law (L. 1924, ch. 363), a local law which "abolishes transfers or curtails any power of an elective city officer," with exceptions immaterial in this connection, becomes operative only when approved by the affirmative vote of a majority of the qualified electors of such city voting on such proposition. A non-operative law is an anomaly but the practice of adopting such legislation has the sanction of the court. (*Barto* v. *Himrod,* 8 N. Y. 483; *People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533, 545.)

Pursuant to the provisions of section 18 of the City Home Rule Law the proposition has been transmitted to the board of elections which is charged with the ministerial duty of submitting local laws to the vote of the people.

The relator challenges the validity of this local law on various grounds hereafter considered. The defendants at the beginning question the right of the relator to

maintain the proceeding. They rely on some expressions in the opinion in *Schieffelin* v. *Komfort* (212 N. Y. 520) to sustain their position. The ruling there was, however, that a citizen and taxpayer might not bring before the court for review in an action in equity the acts of another department of the State government simply because he is one of many such citizens and taxpayers. *People ex rel. Daley* v. *Rice* (129 N. Y. 449) and other cases which may be taken as typical, hold that a citizen and elector has a sufficient interest to make the application for an order of mandamus to compel the performance by a public officer of a public duty. This distinction is recognized in the *Komfort* case and is not disturbed thereby.

The question next arises as to the public duty of the board of elections. Unquestionably it must determine for itself whether the law is in form a local law and in fact properly transmitted to the board. It acts, not under the provisions of the local law itself, but under the provisions of the City Home Rule Law. Its authority is limited to the submission of such local laws as are adopted pursuant to that act by the municipal assembly. If what purports to be a local law has not been adopted sixty days before the election; if it appears to have no relation to the " property, affairs or government of the city, " as defined and limited by section 11 of the law; if it is not on its face such a local law as shall be submitted for the approval of the electors under the provisions of section 15 of the law, the board may reject the proposition transmitted to it and the courts will not compel it to perform an illegal act. A citizen and elector might obtain a mandamus order requiring it to perform its duty in such a case if it disregarded its duty and proceeded to submit such a defective local law to be voted on by the electors. Ordinarily the courts would go no farther. They would not decide the abstract question whether a law which on its face was adopted pursuant

to the provisions of the City Home Rule Law was in conflict with the Constitution or some controlling act of the Legislature or in excess of the powers delegated to the municipal assembly. The decision of such questions might properly await an actual controversy between parties litigant over some action thereafter taken or refused. To nip all invalid local legislation in the bud would be a short and summary way of disposing of it, but the hazardous and inconvenient nature of such action, · taken in the necessary haste of disposing of pre-election contests, makes it wise and expedient for the courts to refuse to intervene in advance of some threatened action. The rule is, however, one of prudence rather than one of power. Exceptional and extraordinary circumstances of a public nature may exist which would prevent such controversy from arising. So here the board of estimate and apportionment if the local law · were approved at the election might refuse to permit a controversy to arise by refusing its consent to any change in the contracts or franchises affected in the exercise of discretion merely which could not be judicially reviewed. If this proceeding is not entertained the question may never arise. In *People ex rel. Hotchkiss* v. *Smith* (206 N. Y. 231) the court decided the then abstract and academic question whether certain amendments to the Election Law relative to independent nominations were constitutional although no certificates of nomination had been tendered. The court held in advance of any actual controversy that the amendments were unconstitutional. Why? Because to do otherwise might prevent independent nominations.

*Williams* v. *Boynton* (147 N. Y. 426) was a case where the board of supervisors illegally adopted a resolution changing a county seat. The illegality consisted in the fact that the resolution was carried by illegal votes. The court restrained the county clerk from submitting the resolution to the people.

Taking into consideration the far-reaching consequences of the adoption of the local law in question, the public interests and vast investments, and the difficulty involved of bringing it to the test of validity in any actual controversy after its approval by the electors, it seems proper for the court to consider the questions of validity raised by the relator. The power to provide for a referendum must be found in the City Home Rule Act. (*Mills* v. *Sweeney*, 219 N. Y. 213.) Otherwise it is unauthorized. Direct legislation in cities must always rest on some constitutional or statutory grant of power. Government by representation is still the rule. Direct action by the people is the exception. The test of validity, therefore, is whether Local Law No. 16 has been adopted as a local law coming within the powers delegated to the city by such law. The power asserted by the city must fail unless the local law squares itself with the restrictions therein contained. (*Browne* v. *City of New York*, 241 N. Y. 96.)

1. Objection is made that the title of the local law is defective. Section 13 of the Home Rule Law provides: " Every such local law shall embrace only one subject. The title shall briefly refer to the subject matter." The State Constitution (Art. III, § 16) reads as follows: " No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in its title." In passing on the latter provision this court has said: " The title of an act should not be misleading and wholly insufficient as an expression of the subject of the act. It should not give a false idea as to the subject and nature of the legislation." (*Economic P. & C. Co.* v. *City of Buffalo*, 195 N. Y. 286.) This local law refers in its title only to the increased fare feature, but it is not so limited. It prohibits any change in any contract or franchise of any city railroad corporation with respect to preferentials, bonuses or subsidies or obligations to render public services. Contracts might

be modified without affecting the five-cent fare feature. The five-cent fare referendum has a catching note of popular appeal. The voter might easily gain from this title the idea that the subject and nature of the legislation was thus limited, whereas the hands of the board of estimate and apportionment are effectively tied as to all modifications of the contracts or franchises. Everything is to be settled by popular vote including those problems which are to be solved by experts after study and hearings. (*Matter of Continental Guaranty Corp.* v. *Craig*, 240 N. Y. 354.)

2. A weightier objection is that the local law supersedes State legislation and takes from the board of estimate and apportionment the powers and duties which have been conferred on it by such legislation. Rapid transit in cities is a legitimate object of local interest and concern. (*Matter of International Ry. Co.* v. *Rann*, 224 N. Y. 83.) It is a city purpose. (*Sun Printing & Publishing Assn.* v. *Mayor*, 152 N. Y. 257.) It is, however, subject to regulation at all times by the power of the State except as the State has divested itself of such power. The limitations on the power of the city under the City Home Rule Law are stated in *Browne* v. *City of New York* (*supra*). The cities have not been wholly emancipated from the power of the Legislature in respect to transportation. While it is contended that rapid transit in the city of New York is a State affair (*Matter of McAneny* v. *Bd. of Estimate, etc.*, 232 N. Y. 377, 393) and that legislation thereon is not included in any grant of authority to the local legislative body of a city to adopt such laws " in relation to the property, affairs or government of a city " as are described in section 11 of the act it is unnecessary for us at this time to decide whether the local law in question is invalid because it relates to " matters other than the property, affairs or government of cities." (City Home Rule Law, § 12, subd. 2.) The effect of local law on acts of the Legislature is defined (§ 12, subd. 1) in substance as follows:

If it is intended to supersede by a local law a provision
of an act of the Legislature which does not in terms and
in effect apply alike to all cities, such local law shall
specify any provision of such act of the Legislature by
chapter number, year of enactment, title of statute,
section, subsection or subdivision which it is intended to
supersede by a local law.  The legislation in question
while not in the form prescribed by the City Home Rule
Law is intended to supersede and if operative does super-
sede the Public Service Commissions Law (Cons. Laws,
ch. 48) in relation to the powers of the Transit Commis-
sion to prepare and put in operation a plan of readjust-
ment for the improvement of transit in the city of New
York.  Such law, as amended in 1921, was held in the
*McAneny Case (supra)* to be not a special city law relat-
ing to the property, affairs or government of cities, but a
general law enacted for the benefit of the public at large.
Chapter 641 of the Laws of 1925 amends this law as
follows:

" § 112.   Approval of contracts to effectuate plans of
readjustment.   Anything contained in this chapter to
the contrary notwithstanding, the transit commission
shall not execute and deliver any contract or contracts
to effectuate any plan of readjustment therein provided
for without obtaining the consent and approval of the
board of estimate and apportionment, or other local
authority of such city."

The local law takes from the board of estimate and
apportionment the power given to it by the law of 1925
to give its consent and approval to contracts to effectuate
any plan of readjustment therein provided for, or even
to consider any resolution having such purpose, until
the board is so empowered to act by the electors of the
city.   In other words, it transfers the power to give such
consent and approval from the board where the State
has placed it to the electors of the city.   The electors
are not a local authority of the city.   The statute of the

State does not contemplate a transfer of power from the local authorities to direct action by the public. While it is doubtless true that street surface railway contracts and franchises exist which are not included in the plan of readjustment referred to in the law quoted and that this limitation does not exist as to them (See *Matter of Quinby* v. *Public Service Comm.*, 223 N. Y. 244), the plan does include the subways and rapid transit railways. But the regulation of the street surface railways is a mere incident to the general provisions of the law. Even as to them it is questionable whether the constitutional power of the local authorities may be delegated back to the electors by the city itself. By the local law in question the local authorities have no power to exercise their independent judgment on matters calling for expert knowledge. They become a mere register to record the will of the voters. They may not even consider the proposition until the voters have acted upon it. The local law either applies only to the street surface railroads or else it attempts to supersede the State law without complying with the requirements of the City Home Rule Law. If it does not repeal the provision of the State law above referred to, that provision remains in force. If it is intended to supersede the State law, it is ineffective in that regard.

The purpose of the local law is plain. If an inconsequential portion may be saved as valid the question remains whether that part may be so separated from the invalid portions as to save it from the condemnation of invalidity. To separate the good from the bad and permit the submission to the voters of a maimed and worthless thing would be folly. Hoping for bread they would receive a stone. (*Fougera & Co.* v. *City of New York*, 224 N. Y. 269, 282, 283.)

Limitations may be placed on the power of the local authorities to give their consent (*Quinby Case, supra,* 260, 261) and it is urged that the local law is nothing more than such a limitation upon the mode and manner

of acting. To so hold would be to regard words and disregard their practical application. Common sense teaches us the local authorities are in effect forbidden to act. The limitation upon action is intended as a prohibition of all action as to all intents and purposes it is. Self sacrifice so extreme by the electorate might be hoped for in the ideal State where the voters are philosophers but not in a modern municipality. The legislative scheme of readjustment is thus effectively thwarted.

The orders appealed from should be reversed and the motion for peremptory mandamus granted, without costs.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Orders reversed, etc.