Nathaniel T. Helman, J.
In this article 78 proceeding, petitioner, the Temporary State Charter Revision Commission for New York, seeks an order reviewing the determination of respondent Board of Elections denying to petitioner the right to place 10 questions upon the ballot in the general election of November 4, 1975, and for other relief.
Petitioner was formed as a State commission pursuant to the laws of the State of New York, (L 1972, ch 634) with authority to study the existing governmental structure of New York City and to propose a new or revised city charter to the electors of the city. Under subdivision d of section 3 of chapter 634, it was granted the right to prescribe the form of ques *1031 tions proposing a new or revised charter, to be submitted to the respondent Board of Elections and to fix the order of the questions on the ballot. The life of the commission was extended by two additional legislative enactments, chapter 63 and 385 of the Laws of 1973.
On August 5-, 1975, petitioner filed proposed amendments for a new or revised charter in a document consisting of some 400 pages.
The letter of transmittal contained a notification that the commission "may prior to such election revise the order, form and content of such questions, and submit abstracts of the proposals as it may deem appropriate”.
Thereafter on September 25, 1975, petitioner filed a list of 10 questions for the new or revised charter to be inserted on the ballot for the coming election. The procedure was approved at a hearing held by the Board of Elections which on September 25 by a vote of 7 to 2, authorized the placing of the 10 questions on the ballot. Thereafter, on October 8, 1975, the board at another meeting voted 5 to 1 to reconsider its prior determination, so as to limit the petitioner’s questions to the nine original questions submitted under the charter on August 5.
It may be noted that respondent, does not seriously challenge the contention of petitioner that the vote of the board taken on October 7, 1975 was ineffective because a majority of the commissioners did not vote affirmatively on the act to be taken. The board consists of 10 commissioners and in accordance with the provisions of section 41 of the General Construction Law a majority of six affirmative votes was required for the adoption of a resolution. In the instant case, only five were recorded.
The basic question presented by the respondent is whether the 90-day time limitation contained in the statute for the filing of a new or revised charter embraces a proposed series of questions to be submitted to the electorate in explanation or clarification of the language of the charter.
Subdivision c of section 3 (L 1973, ch 385) of the act reads as follows: "c. On or before June first, nineteen hundred seventy-five, the commission may by resolution provide for the submission of such charter to the electors of such city at the general election to be held in nineteen hundred seventy-five or, if the commission considers it desirable to submit such charter at a special election, the commission may recommend such special *1032 election to the governor who may, in his discretion, make proclamation of a special election, which proclamation shall be at least ninety days but not more than one hundred twenty days prior to the date of such special election. Such new or revised city charter shall be died in the office of the city clerk not less than ninety days prior to the election at which it is to be submitted. ” (Emphasis added.)
In conformity with the provisions of this statute, petitioner filed with the city clerk a number of proposed amendments to the existing city charter. Transmitted also were nine ballot questions submitted to the voters in explanation of the proposed amendments, together with a letter of transmittal expressing an intention to effect future revisions of such questions where needed.
The crucial question as to whether the reservation by the commission of its right to revise the "Order, form and content” of the questions was in violation of the 90-day limitation fixed by subdivision c of section 3 (above quoted) depends on a reading of the succeeding subdivision of the same section which states the following: "The charter commission may also submit (i) its proposed new charter in two or more parts, so arranged as to ensure that corresponding parts of the existing charter remain in effect if one or more of such parts are not adopted; (ii) a revised charter in one or more parts; (iii) alternative charters, (iv) amendments and (v) alternative provisions to supersede designated portions of a proposed charter or amendment if adopted. In any such case, the charter commission shall prescribe the form of the question or questions to be submitted and to ñx the order of the questions on the ballot. ”(§ 3, subd d; emphasis added.)
It is to be noted that nowhere in the statute is there any time limitation on the filing of ballot questions once the charter has been filed within the 90-day period. Of interest also is the fact that no reference is made to ballot questions in subdivision c of section 3 which establishes time limitations. Significant also is the fact that petitioner’s proposed change in the format of the ballot questions in no way altered or modified the amendments to the charter as originally filed on August 5, 1975.
Essentially the changes requested were stated in a letter addressed to the city clerk by the commission as follows: "The subject matter included within question 10 consists of the proposals which are at present included in Question 3. This *1033 transfer of said material in no way changes, alters or amends the underlying Amendments to the Charter submitted to you * * * The only change in the first 9 questions is that two chapter numbers have been removed from question 3, and placed in question 10, and a language change in question 7.”
Nowhere has it been claimed by the respondent that these changes in format added to the material contained in the new charter nor that they effected any modification of the extensive proposals contained in the 400 pages in the charter as filed.
In furtherance of its proposals, and for the purpose of summarizing all of the amendments contained in the 10 questions, the commission prepared for distribution to polling places throughout the city 150,000 abstracts all of which were distributed on October 3,1975 (before the board reconvened on October 7, 1975 to alter its previous holding). Additionally, hundreds of thousands of pieces of literature have been prepared for distribution and the commission advises that one million pieces of literature are in preparation for further distribution.
The responsibility for formulating questions to be submitted and the order in which they are to appear on the ballot is by the enabling act given exclusively to the commission. It was clearly the intent of the Legislature in enacting subdivision d to provide the commission with the power to explain to the public in the form of questions the meaning and intent of a proposed new or revised charter. If the original nine questions as submitted required further elaboration and explanation the commission was empowered to avail itself of this privilege by changing its format, provided it did not act arbitrarily, capriciously and effected the change in format within a reasonable period of time.
The case of Matter of McCabe v Voorhis (243 NY 401) relied on by respondent is inapposite. That case involved a local law which required an affirmative vote by the electorate at least 60 days before the next general election. There the local law was passed 56 days before the general election and signed 48 days prior thereto. Clearly this was in violation of the minimal 60-day requirement. At bar, the 90-day limitation under subdivision c was concerned only with the filing of the charter itself and not with the subsequent submission of questions under subdivision d in explanation of the charter.
No contention has been made by the respondent that the *1034 extensive circularization by petitioner of its proposals will not provide the general voting public with a reasonable opportunity to examine the issues involved and to formulate a sound judgment thereon.
Accordingly application of the petitioner will be granted to the extent here indicated.