Jones, J. (dissenting).
We cannot agree with the majority that the dispositions of the courts below must now be reversed and the complaint dismissed on the ground that the issue presented is premature. Section 11 of article VII of our State Constitution provides that no debt may be contracted by the State unless it has been authorized by law "for some single work or purpose, to be distinctly specified therein” and shall thereafter have been approved by the voters at a general election. Only one such proposition may be submitted at any general election. Chapter 455 of the Laws of 1977 was adopted in purported conformity with this constitutional mandate. It had two intended legal consequences: one to authorize the creation of a State debt to an amount not exceeding $750,000,-000 for the purpose of "promoting and implementing a comprehensive and integrated economic action program”, the other to direct submission of the proposition to the voters at the general election on November 8, 1977. While it might be said that the authorization aspect of the act would not be *535 subject to judicial attention until after the results of the election had been tabulated and it was known that the voters had approved the proposal, the direction for submission to the voters was ripe for possible judicial examination at any time after the Governor’s signature on July 19, 1977.
The parties have complicated our consideration of this appeal. The failure of the New York Public Interest Research Group to have joined the New York State Board of Elections and plaintiffs’ willingness thereafter to dismiss the action as to the chairman of that board have substantially hindered the courts in fashioning a complete remedy—one which would include a direction for the removal of the proposition from the November 8 ballot. Additionally and equally unfortunately, that circumstance has served to create an impression of prematurity on which the dissenter below and now the majority rely. Had the Board of Elections been made party, effective direction could have been given for the removal of the proposition from the ballot. The present appeal would then have matched the circumstance which existed in Matter of McCabe v Voorhis (243 NY 401), and that case would have been authority for reaching and resolving the merits of the present appeal, notwithstanding that the electorate has not yet spoken. The majority opinion cites a number of other instances in which, where the Board of Elections had been made a party, the courts have ruled on the validity of propositions to be submitted to the electorate prior to the actual vote (p 531).
In our view, while the absence of the Board of Elections on this appeal makes it more difficult to grant the applicable remedy,* it does not serve to make what would otherwise be a ripe controversy premature and thus beyond the reach of judicial consideration. There can be no denial of the genuineness of the dispute between the parties or of its present reality. There is a real controversy, not abstract differences of opinion or an academic disputation. (1 Anderson, Actions for Declaratory Judgments, § 9, p 51.) While absence of parties may limit the choice of implementing remedies, it should not be held to vitiate what would otherwise be a justiciable controversy appropriate for judicial determination in an action for a declaratory judgment. The circumstance that the court may not, without great difficulty, direct the performance *536 of a mechanical change in the voting machines and on the written ballot does not oust the court of jurisdiction to resolve the substantive differences between those persons who are directly interested and are parties to the litigation. From another perspective, to say that a declaration of unconstitutionality by this court would be legally and practically useless or futile unless applied directly to the voting machines would be to ignore the vitality of our judicial writings, which we are not willing to do. In our view the absence of the Board of Elections does not oust our court of authority or relieve us of responsibility for its exercise, and no case is cited by the majority which holds that it does.
We recognize the element of uncertainty stressed by the majority which is unquestionably present in this case—the comprehensive and integrated economic action program may never be approved at the polls, a circumstance comparable to that in the cases that the majority cites. This contingency factor, relevant to the authorization aspect of the act but irrelevant to the submission aspect, might have pursuaded the lower courts to reject the present action for a declaratory judgment. Whether to entertain such an action, however, is to be determined in the exercise of, judicial discretion (CPLR 3001). We cannot say that the determination of the Supreme Court, now affirmed at the Appellate Division, to accept the present action constituted an abuse of discretion as a matter of law (Woollard v Schaffer Stores Co., 272 NY 304, 311-312).
Our judicial predicament is also made more difficult by the fact that the Attorney-General has not raised the defense of laches, by appropriate pleading of otherwise. It is only that circumstance which deters us from consideration of dismissal of the present action because of an unacceptable delay in commencing this action for a judicial declaration of the unconstitutionality of chapter 455. Advance publicity has been widespread, and neither the passage of the act by the Legislature on June 27, 1977 nor its signature by the Governor on July 19 could have come as a surprise to these plaintiffs. Then, to have postponed action until September 12, 1977 and thus to confront the courts and the Attorney-General with the necessity—in telescoped proceedings inescapably conducted under an acute consciousness of the imminence of the November 8 election—to consider and resolve an issue of such significance, is an imposition on the people of the State of New York. Nonetheless, the defense of laches was not raised, *537 and, litigation having progressed this far, the courts have a responsibility to determine the issue regardless of the difficulties created for the lawyers in the litigation and even for the voters, who are kept in doubt and perhaps in confusion as to the status of the bond proposition. Certainly the failure of our court to address the merits can only deepen and compound the confusion.
On the merits, we would hold that chapter 455 falls short of obedience to the command of section 11 of article VII of our State Constitution, and very much for the reasons expressed by Mr. Justice Larkin at the Appellate Division. In our view, the debt contemplated by the present enactment is not "for some single work or purpose” within the constitutional contemplation. We would now go no further. It would be imprudent and unwise in the present circumstances to undertake to define or to describe the permissible outer boundaries of the single-purpose requirement. Focus on linguistics cannot be determinative in interpretation of this provision—perhaps is not even helpful; the constitutional history submitted to us is far from conclusive. The argument that a single purpose may be discerned from the natural and necessary relatedness of functional components of a program does not commend itself to our acceptance. We go no further than to say that the presently proposed debt program does not meet the constitutional requirement and to note that we decline to attempt, on the present accelerated submissions, any formulation as to the meaning of the constitutional provision.
We do observe that, unlike the propositions which authorized State indebtedness in 1932, 1933 and 1934 to which our attention is drawn by the Attorney-General, chapter 455 of the Laws of 1977 contains no allocation of the proceeds of the bond sales to different components of the comprehensive and integrated economic action program. (Cf. L 1932, chs 566, 567, § 1; L 1933, chs 260, 259, § 2; L 1934, chs 718, 717, § 2.) There is no legislative or statutory representation, to say nothing of legally enforceable assurance, as to what allotment or even economic emphasis would be apportioned to the four aspects of the program. In effect the voters are asked to approve a proposition with respect to which only the total amount is known, and which if approved would serve as a precedent for placing within executive and legislative reach largely unallocated and thus uncontrolled expenditure opportunities.
One of the great purposes of a Constitution is to restrain a *538 majority, which will usually take care of itself. Hence, constitutional limitation is designed to protect against a transitory electoral majority as it is also designed to control transitory legislative and executive branches. The provisions of our Constitution are to be liberally interpreted, but surely not to be distorted to the point of near meaninglessness. (Cf. Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y., 40 NY2d 731, 739.)
For the reasons stated we would affirm the order of the Appellate Division.
Judges Gabrielli and Cooke concur with Judge Wachtler; Judge Fuchsberg concurs in a separate opinion; Judge Jones dissents and votes to affirm in an opinion in which Chief Judge Breitel and Judge Jasen concur.
Order insofar as appealed from reversed, without costs, and the case remitted to Supreme Court, Albany County, with directions to dismiss the complaint in accordance with the opinion herein.

 Even now we are informed that, were our court to issue implementing directives, practical means could be found, perhaps at some expense, to avoid voter confusion.