OPINION OF THE COURT
Charles A. Kuffner, Jr., J.
Before the court is a special proceeding commenced by order to show cause (McBrien, J.), dated July 24, 1985. The petitioners, residents of Richmond County and duly registered voters thereof, seek an order prohibiting the respondents, the City Clerk and members of the Board of Elections of the City of New York, from taking any actions in placing upon the ballot at the next general election a certain referendum to amend the New York City Charter. The intervenors-respondents are individuals and organizations representing proponents of the referendum in question. The said referendum seeks amendment of New York City Charter, chapter 3, § 67 so as to restrict the power of the Board of Estimate to approve the use of city property or moneys for any military facility which is designed to carry or maintain nuclear weapons. Specifically at issue is the announced plans of the City of New York to cooperate with the United States Navy in the construction of a naval facility in the Borough of Staten Island to serve as a home port for the battleship U.S.S. Iowa and its support vessels which intervenors-respondents believe to carry nuclear weapons.
The provisions for placing such referendum upon the ballot and for the filing of objections thereto are governed by Municipal Home Rule Law §§ 37 and 24.
The factual scenario underlying the instant proceeding is as follows: On July 2,1985, the intervenors-respondents filed with the City Clerk a petition respecting the referendum, the petition was subscribed by, in excess of, some 60,000 persons. Municipal Home Rule Law § 24 (1) (a) requires that the City Clerk “shall examine each such petition so filed with him and shall, not later than fifteen days after the date of its filing, transmit to the legislative body a certificate that he has examined it and has found that it complies or does not comply, as the case may be, with all the requirements of law.” On July 25, 1985[1] the City Clerk transmitted his certification to the City Council that the *824 petition complied with the requirements of law and contained 34,436 valid signatures (30,000 valid signatures being the required minimum).
Section 24 (1) (a) of the Municipal Home Rule Law further states: “If within twenty days after the filing of such a petition a written objection thereto be filed with the supreme court, or any justice thereof * * * such court or justice shall determine any question arising thereunder and make such order as justice may require” (emphasis supplied).
The effect of this provision of the statute is to require any persons who have “objections” to the petitions to file such objection within 20 days of the filing of the petition. In the instant case the petition having been filed with the City Clerk on July 2, 1985 the petitioners had until July 22,1985 in which to file objections in the manner specified by the statute.[2]
It is beyond dispute that the order to show cause, with the petition annexed, was not signed by Justice McBrien until July 24, 1985 and not served upon the municipal respondents until some time thereafter.
The intervenors-respondents have moved for dismissal of the petition, inter alla, on the ground that the objections not having been timely made.
In order to determine what, if anything, was filed by the petitioners with the court or any justice thereof within 20 days the court directed a hearing. Said hearing was held before me on September 4,1985.1 made the following findings of fact: On July 22,1985 (the last permissible day for the filing of objections) the petitioner’s attorney appeared at the chambers of the Honorable Rose McBrien, an acting Justice of the Supreme Court. The attorney spoke with the Justice’s law clerk regarding the objections and presented to the clerk a copy of the order to show cause and petition such as presently before this court. The attorney was advised that the Justice was not available to review the same and the clerk retained the papers for the Justice. These papers were not verified by petitioner and did not have an index number upon them. It is beyond dispute that an index number was not purchased from the County Clerk until the following afternoon (July 23). This index number was placed upon the order to show cause now before the court and it is this order that was ultimately signed by Justice McBrien on July 24, 1985.
Notwithstanding, credible evidence was adduced at the hearing to the effect that Justice McBrien, in fact, received the *825 duplicate set of papers presented to her chambers on July 22, 1985. In the afternoon of July 22, 1985, the Justice had a conversation with a senior law assistant in this court concerning the ex parte order presented to her and the petition with objections annexed to it. It appears quite evident that when the petitioner’s attorney returned to the courthouse on July 23,1985 with a verified petition and order to show cause and after obtaining an index number he was successful in having these papers brought to the Justice and it was this order that was eventually signed on July 24, 1985.
What happened to the duplicate set of papers presented to the Justice on July 22, 1985 is not known except that the order annexed to these papers was, apparently, not signed.
Again, the intervenors-respondents contend that petitioners failed to timely commence a proper proceeding to challenge the petition within the meaning of the Municipal Home Rule Law § 24 (1) (a).
The pertinent position of section 24 (1) (a) with regard to the procedure required has been above stated and concludes: “Such proceeding shall be heard and determined in the manner prescribed by section 16-116 of the election law” (emphasis supplied).
It is clear that it is an “objection” that must be filed within the 20-day period following the filing of the petition with the City Clerk. The term “objection” is not defined in the statute. However, since the last sentence of subdivision (1) (a) directs that such proceeding be heard and determined in the manner prescribed by the Election Law, the court should look to that statute, for purposes of analogy in determining the meaning to be applied to the term “objection”.
The Election Law does not specifically define “objection” (Election Law § 1-104). The Election Law does not require an objection to be verified. It need only be in writing and filed with the officer whose duty it is to receive it. (Election Law § 6-154; Rules of State Board of Elections § 6204.1 [9 NYCRR].) At most, all that is required is that it be signed by the objector. (Banker v Apfeldorf, 93 AD2d 848 [2d Dept].) The petition delivered to this court on July 22,1985 met those requirements that the objection be in writing, signed, and filed with a justice of this court.
While the court refers to the Election Law for guidance as to the interpretation of that portion of the Municipal Home Rule Law in question herein, it is constrained, however, to view the latter statute as sui generis and to adhere to its dictates, when clear, as written. The Municipal Home Rule Law has provided *826 that the objections to be filed (whatever their appropriate form) may be filed with the Supreme Court or, alternatively, any justice thereof. Such procedure is, admittedly, uncommon. It has been argued by the intervenors-respondents that the objections herein cannot be considered “filed” as of July 22 in that the index number was not obtained until July 23 and, thus, a file “created” with this court as maintained by the County Clerk who is also the Clerk of the Supreme Court of Richmond County. (NY Const, art VI, § 6 [e].) Such an interpretation would be valid and, perhaps, dispositive were it not for the alternative provision in the statute providing for “filing” with a justice of the Supreme Court. Common experience teaches that it is often impractical or impossible to have papers utilized in commencing or prosecuting a litigation brought to the courthouse, indexed and filed before presentation to a justice. Exigencies of time and circumstance not infrequently arise where a party must proceed directly to a justice for appropriate relief. Indeed, in parts of this State the courts or parts thereof may not be in session daily or justices may be available only in adjoining counties or judicial districts to receive or hear matters requiring urgent consideration.
In enacting the statute as it did the Legislature must have anticipated that unusual or exigent circumstances might arise by permitting a “filing” with a “justice” as distinguished from the usual procedures employed in filing with the court. Exigent circumstances requiring swift action are common in election matters. To construe the statute in a contrary fashion would, impermissibly, lead the court to disregard the statutory alternatives under the guise of interpreting the statute. {See, McKinney’s Cons Laws of NY, Book 1, Statutes § 231.)
Thus, while the court agrees with the intervenors-respondents that a failure to file objections within the time specified in the statute would require dismissal of the petition {Matter ofDe Santis v Brown, 37 AD2d 865) it concludes that the mandate of the statute was satisfied by petitioners with the presentation of the duplicate order to show cause and petition to Justice McBrien on July 22, 1985, in that the papers were accepted by Justice McBrien’s law clerk and, unquestionably, received, reviewed, and retained by the Justice on that day. A paper is “filed” with the officer appointed by law to receive it when it is placed in his or her custody (Smith v Geraty, 58 Misc 556) and the term imports that the paper shall remain with that person (cf. Matter of Stanley v Board of Appeals, 168 Misc 797). The court, in the Smith v Geraty case (supra), in turn cited Phillips, Goldsby & Blevins v Beene (38 Ala 248, 251) and stated (p 557): *827 “the filing of a paper is now understood to consist in [sic] placing it in the proper official custody, on the part of the party charged with the duty of filing the paper”.
As a Justice of the Supreme Court, Justice McBrien was a person charged by law {i.e., Municipal Home Rule Law § 24 [1] [a]) with the responsibility of filing an objection if presented to her. She ultimately retained those papers presented to her in her custody. Thus both the letter and spirit of that statute were complied with in a timely fashion.
Respondents-intervenors also challenge the petition/objection as lacking in the required specificity. Again Municipal Home Rule Law § 24 (1) (a) does not define “objection” and the court should look to applicable provisions of the Election Law for guidance.
Contrary to respondents-intervenors’ position, the Election Law does in fact contain a two-step process for objections to petitions. General objections must be filed within three days and specific objections must be filed within six days thereafter. (Election Law § 6-154 [2].) By analogy, the scheme set forth in Municipal Home Rule Law § 24 (1) (a) may reasonably be interpreted to permit a two-step process when a challenge to a referendum petition is made, to wit: first, written objection is filed with the Supreme Court, or any justice thereof, within 20 days after the filing of the objectionable petition with the City Clerk; secondly, a special proceeding is commenced, heard, and determined in accordance with Election Law § 16-116. Nowhere in the Municipal Home Rule Law is a time limitation for the commencement of the proceeding prescribed; similarly, the Election Law provides no prescribed time limitation for this specific type of proceeding. Presumably, the last day to commence such a court proceeding coincides with the last day to file objections to nominating petitions, i.e., July 25 (1985 Opns Corporation Counsel of City of New York No. 20-85, p 8).
In support of their position that the objection to referendum petitions must be specific, the respondents cite the case of Matter of Bradley v D’Apice (91 AD2d 691 [2d Dept]). Bradley is clearly distinguishable. It concerned a petition to examine voting machines and paper ballots relating to a local election for Family Court Judge. The petition was made after the election was held, and the Second Department held that the petition failed to set forth facts sufficient to justify the relief requested. The petition failed to set forth facts which supported their claims of irregularities, discrepancies, or errors which affected the election. No *828 form of “objection” was required to be filed as a condition precedent to the Bradley proceeding.
At this point the court notes that Election Law § 16-116 mandates that the court hear a proceeding such as this “upon a verified petition and such oral or written proof as may be offered” (emphasis supplied). It is clear from these words contained in the statute that the Legislature contemplated that the specifics of a petitioner’s challenge would be heard at a plenary hearing to be conducted by the court. Given the severe time restraints contained in Municipal Home Rule Law § 24 (1) (a), the creation of the procedure utilizing the filing of an objection with the Supreme Court, or any justice thereof, it is difficult to imagine that the Legislature intended that a petition in support of a special proceeding such as this, include the written proof of the specific objections to over 30,000 signatures. Such a requirement would be impractical, overburdensome, and nearly a physical impossibility. This court is satisfied that the Legislature intended to permit the petitioner/objector to state his objections to the challenged petition to the best of his ability, ab initia, and to reserve for the court hearing his specific objections to each signature contained in the petition.
Recent decisions handed down by the Court of Appeals make it clear that it should be the public policy of this State not to deny access to our courts or to the ballot box by reason of hypertechnical rules. The Court of Appeals has made it clear that the principle that the law will not bother with trifles still holds true in Election Law matters. (Matter of Staber v Fidler, 65 NY2d 529.) Respondents-intervenors’ argument that the petition presented to the court on July 22,1985 does not comply with the filing requirements set forth in Municipal Home Rule Law § 24 (1) (a) exudes form over substance. By presenting themselves and their petition to this court on that date, it is apparent that petitioners were well aware of the time limitations set by law, and were diligent in their attempts to comply with a law that is concededly unclear in its language and uncertain in its application. The fact that there is little case law interpreting this statute only amplifies the problems created by the words used therein. To deny petitioners an opportunity to present their challenge to the offending petition in this court is to reverse the course recently charted by the Court of Appeals in the well-publicized Staber v Fidler and accompanying cases. It must be remembered that denial of respondents-intervenors’ motions to dismiss this proceeding does not award a victory to petitioners; they must still be successful in their specific challenges to the signatures contained in the petition.
*829 Assuming, arguendo, that the intervenors-respondents are correct in their interpretation of the statute to the effect that it speaks only of a one-step process (that the Legislature intended the words “objection” and “proceeding” to be synonymous) the result herein would still be the same. If the Legislature intended that “objections” could only be “filed” in the form of the institution of a special proceeding the petitioners herein have proceeded properly. The papers presented to Justice McBrien were in the form of an order to show cause with a petition annexed. The petition was signed but not verified. The failure to have verified the petition presented on July 22, 1985 was not a fatal defect. The order that was signed was annexed to the verified petition presented on July 23 and was a duplicate of the unverified one submitted on July 22. In any event the omission may be cured nunc pro tune as it did not prejudice a substantial right of any party to this proceeding. (CPLR 2001; see also, Matter of Houghwot v Town of Kiantone, 69 AD2d 1011.) The intervenorsrespondents direct the court’s attention to CPLR 304 which governs the method for commencement of a special proceeding. It is contended that because the statute equates “objections” with “proceeding” and inasmuch as no special proceeding was commenced, as contemplated by CPLR 304 within 20 days of the filing of the petitions with the City Clerk it necessarily follows that the proceeding is untimely. This argument is without merit. Municipal Home Rule Law § 24 (1) (a) speaks only in terms of a “filing” and does not concern itself with the commencement of a proceeding as contemplated by CPLR 304. Had the Legislature intended the commencement of a proceeding within a specified time frame it would have so stated. Municipal Home Rule Law §24 (1) (a) establishes its own unique, if somewhat ambiguous, procedure to be utilized. Given the usually pressing time frame governing the resolution of matters involving elections this departure from customary practice is neither unwarranted nor unparalleled. For example, CPLR 3031 establishes expedited procedures for the hearing and determination of controversies usually arising from commercial disputes where a speedy determination is considered essential.
Petitioners raise a constitutional challenge to the proposed referendum. In substance, they argue that the proposed amendment to the City Charter would be violative of the supremacy clause of the US Constitution (art VI) because the Federal Government is charged with the responsibility of providing a national defense and military planning (art I, § 8). They contend that the proposed amendment, by prohibiting the city from selling or leasing its land for a facility which may store nuclear *830 weapons, would interfere with the Federal responsibilities to provide for the common defense.
Without deciding the merits of such contentions, the court agrees with respondents-intervenors that it is premature at this stage. Since the proposed amendment has not been enacted (indeed, it is not yet on the ballot for a determination by the voters), it is not ripe for judicial determination. The leading case on the subject of ripeness of proposed legislative action is Matter of McCabe v Voorhis (243 NY 401, 412), in which the Court of Appeals admonished the courts not to intervene in advance of some threatened legislative action. Though the Court of Appeals in McCabe did pass upon the merits of the referendum before it, it emphasized that its rule is one of “prudence * * * [not] power” (McCabe v Voorhis, supra, at p 412).
In the exercise of such prudence, this court may consider two factors. First, the voters may not approve the referendum. If so, the court’s determination might prove interesting, but would be moot. (New York Public Interest Research Group v Carey, 42 NY2d 527, 531.) Secondly, assuming passage, the issue of its constitutionality may be raised in the future if negotiations for the sale or lease of the land in question to the United States Navy are hindered by reason of the Charter amendment. Stated another way, the court sees no reason why the Charter amendment could not be challenged on these constitutional grounds after enactment, by aggrieved parties. (See, Town of Union v Conlon, 19 AD2d 848.)
Therefore, there is no compelling reason in the matter sub judice requiring the court to exercise its power to rule upon legislation in the proposal stage. The court, therefore, declines to pass upon the constitutional issues raised by petitioners.
Accordingly, the motions of the intervenors-respondents to dismiss the petition on the procedural grounds discussed herein-above are denied.
The petition is granted only to the extent that a Special Referee is appointed to hear and report on the objections to the petition for referendum and otherwise in accordance with this decision. The court shall hereafter issue such further orders as are required to specify the Referee and the dates, times and places of the hearing of all objections as well as to expedite such procedure.

. While the City Clerk failed to act within the 15-day period called for in Municipal Home Rule Law § 24 (1) (a), such failure does not affect the validity of his action. The use of the word “shall” in such cases where the time within which an act to be performed is specified, but not made of the essence, is held to be directory and not mandatory. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 172; Matter of 121 -129 Broadway Realty v New York State Div. of Human Rights, 43 AD2d 754 [3d Dept 1973].)

. July 22 being the 20th calendar day after the date of filing and the date of filing being excluded. (See, General Construction Law § 20.)