MOSES C. MILLS, Respondent, *v.* DANIEL J. SWEENEY, as City Clerk of the City of Buffalo, Appellant.

Buffalo, city of — ordinance of common council providing that certain questions of public policy be submitted to the electors at any general election — ordinance examined and held, to be ultra vires and invalid.

1. A statutory provision that ordinances "now in force" shall remain in force until altered or repealed does not validate a void ordinance.

2. The ordinance enacted by the common council of the city of Buffalo on the 11th day of July, 1904, which provides that on compliance with certain conditions therein stated, it shall be the duty of the proper election officials of that city to submit any question or questions of public policy petitioned for or authorized to the electors of said city at any general election in order to obtain the opinion of such electors thereon, is unauthorized by the city charter. (L. 1891, ch. 105, § 17, subd. 11; L. 1914, ch. 217, § 13, subd. 11.)

*Mills* v. *Sweeney,* 175 App. Div. ——, affirmed.

(Argued October 25, 1916; decided October 31, 1916.)

APPEAL, by permission, from so much of an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 20, 1916, as reverses that part of an order of Special Term which denied a motion for an injunction *pendente lite* restraining the defendant from publishing a notice that a certain question would be submitted to a vote of the electors of the city of Buffalo at the coming election, from incurring any expense on account of said city in publication of the same

and from performing any official act toward submitting the question referred to to the voters of said city.

The following questions were certified: "1. Did the common council of the city of Buffalo have the power to enact chapter XLV of the ordinances of the city of Buffalo?

"2. Has the said ordinance been ratified by subsequent legislative enactments?

"3. Is the ordinance now in force?

"4. May the defendant be restrained from publishing the required notices that question No. 3 in the petition is to be voted upon at the general election to be held November 7, 1916?"

The facts, so far as material, are stated in the opinion.

*William S. Rann, Corporation Counsel (Clayton M. Smith* of counsel), for appellant. The ordinance was authorized by the general welfare clause of the Buffalo city charter. (L. 1891, ch. 105, § 17.) The ordinance has been ratified by the provisions of the present charter of the city of Buffalo. (L. 1914, ch. 217; *People ex rel. Lieberman* v. *Vandecarr,* 81 App. Div. 128; 175 N. Y. 440; 199 U. S. 552; *People* v. *Davis,* 78 App. Div. 570.)

*Daniel J. Kenefick* for respondent. The common council had no power to enact the ordinance in question. (*People ex rel. Hopkins* v. *Bd. of Suprs.,* 52 N. Y. 556.) Nothing contained in the new charter of the city of Buffalo validates the ordinance. (L. 1914, ch. 217.)

WILLARD BARTLETT, Ch. J. This is a taxpayer's action to restrain the expenditure of the public moneys of the city of Buffalo in publishing certain election notices under chapter XLV of the ordinances of that city. The complaint demands judgment that the ordinance in question shall be adjudged to be illegal and invalid and of no force or effect.

The ordinance was enacted by the common council on

the 11th day of July, 1904, and the portion thereof material to be considered upon this appeal reads as follows:

## "CHAPTER XLV

### "*Public Policy Questions.*

"1. Upon filing with the City Clerk of a written petition signed by five per centum of the registered voters of the City of Buffalo, as shown by the last registration list, or upon a resolution of the Common Council of said City, passed by a majority vote thereof authorizing it, it shall be the duty of the proper election officials to submit any question or questions of public policy so petitioned for or authorized, to the electors of said City at any general election in order to obtain the opinion of such electors thereon. * * * Not more than three questions proposed by petition shall be submitted at the same election."

The ordinance contains further provisions requiring the city clerk to publish in four daily newspapers a notice that the questions are to be voted upon at the next election, and it also requires that the questions shall be submitted in the manner and form prescribed for the submission of constitutional amendments or other public measures.

It is contended in behalf of the appellant that authority in the common council to enact the ordinance was conferred upon that body by a provision of the city charter then in force (Laws of 1891, chap. 105) known as the general welfare clause. That clause reads: "The Common Council shall, from time to time, enact * * * such other and further ordinances not inconsistent with the laws of the state, as shall be deemed expedient for the good government of the city, the protection of its property, the preservation of peace and good order, the suppression of vice, the benefit of trade and commerce, the preservation of health, the prevention and extinguishment of fires, the exercise of its corporate powers and the

performance of its corporate duties." (Section 17, subd. 11.)

It will be observed that nowhere in this charter provision is any express power bestowed upon the common council to submit questions of public policy or other questions to a referendum. It is only by implication that the existence of the power can be established.

Judge John F. Dillon in his classic treatise on the Law of Municipal Corporations says that in this country the the term "ordinance" is seldom, if ever, applied to charters or acts of the legislature regulating the powers of municipalities and their mode of action, but is limited in its application to the acts or regulations in the nature of local laws passed by the proper assembly or governing body of the corporation. (2 Dillon's Mun. Corp. [5th ed.] § 570.) This statement imports that legislation regulating the method of action of a municipal corporation hardly falls within the scope and province of an ordinance; but however that may be, the word ordinance usually means simply a local law prescribing a general and permanent rule. (*Citizens Gas & Mining Co.* v. *Town of Elwood*, 114 Ind. 332.) An ordinance generally imports a command or prohibition applicable to all the inhabitants or certain classes in the given municipality. It is usually designed to compel or prevent action of some sort on the part of some one.

The ordinance under consideraion here is of an entirely different character. The phrase "questions of public policy" is broad and indefinite. It may include not only questions of local legislation under present consideration by the common council, but also plans, projects or schemes brought forward for the first time by a small minority of the voters in which the remainder of the community takes no special interest and concerning which an expression of opinion by the electorate can be of no possible value, being merely a *brutum fulmen.* In the latter view it is merely a measure for the taking of

an advisory popular vote having no legal effect or conse-
quences whatsoever upon any question of public policy
whenever such vote is petitioned for by five per cent of
the registered electors in Buffalo or whenever it is author-
ized by a resolution of the common council. No provi-
sion is made for giving effect to the advice of the voters.
Their approval or disapproval of a specified public policy
will not compel any one to adopt or reject it in the admin-
istration of the affairs of the municipality. There is no
requirement that the questions propounded need have
reference to any matter actually under official considera-
tion.- Hence a referendum under the ordinance may not be
restricted to the useful function of informing the common
council as to the sentiment of the electorate concerning
some public measure before that body for adoption or
rejection. In short, the language of the enactment is so
broad and the possibilities thereunder so unlimited that it
permits a small proportion of the voters to invoke public
action which may be utterly useless and futile.

These observations, however, are only suggestive of
the exceptional character of the ordinance and do not
apply directly to the question whether the common coun-
cil was vested with authority to enact an ordinance of
this kind by the general welfare clause of the former
charter.

I am of opinion that this general clause (also to be
found in the existing charter, chap. 217 of the Laws of
1914) was not intended by the legislature to confer upon
the common council authority to enact an ordinance
involving a referendum of any kind. Ever since the
referendum has found recognition in the political system
of this state it has been the policy of the legislature to
deal with it directly and in express terms, and not dele-
gate the right to adopt it to inferior legislative bodies.
Thus express legislative provision for the submission of
propositions to the voters of specified localities is to be
found in the General City Law (sections 23 and 70); in

the Town Law (section 48); in the Liquor Tax Law (section 13); and in the Village Law (section 348). In the existing charter of the city of Buffalo we find an article entitled "The Referendum" (sections 31 to 34, inclusive) which provides under certain circumstances for submitting to a vote of the electors of the city the question whether an ordinance shall be repealed and which prescribes a method whereby any resolution appropriating money other than for the regular payrolls or disposing of any property or rights of the city may be submitted to the electors before becoming effective. I think that the charter provisions prescribing when a referendum may be had are exclusive and by implication prohibit the common council from providing by ordinance for a referendum as to other matters.

If the general welfare clause in the Buffalo charter authorized that city to provide by ordinance for a referendum upon any questions of public policy it is difficult to perceive why all the second-class cities in the state do not possess the same power. The Second Class Cities Law (Cons. Laws, ch. 53) provides as follows: "The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with law, for the government of the city and the management of its business, for the preservation of good order, peace and health, for the safety and welfare of its inhabitants and the protection and security of their property; and its authority, except as otherwise provided in this chapter, or by law, is legislative only." (Laws of 1909, chap. 55, § 30.) Here is a grant of power quite as broad as that in the general welfare clause of the charter of the city of Buffalo. If it be deemed to authorize the enactment of a similar ordinance it might happen that at a general election for state officers numerous questions of municipal public policy could be submitted to the electors in every second-class city in the state. It is a part of our governmental policy, as

announced in the Constitution (Art. XII, § 3), that city officers shall not be chosen at an election of state officers. The same policy forbids voting upon municipal questions at such elections; yet an ordinance of this character, if valid, not only permits but may require that very thing to be done. A municipal corporation, says Judge Dillon, "cannot in virtue of its incidental power to pass by-laws, or under any general grant of that authority, adopt by-laws which infringe the spirit or are repugnant to the policy of the state as declared in its general legislation." (2 Dillon's Mun. Corp. [5th ed.] § 601.) The ordinance restricts the number of questions to be submitted at one election to three; but this number might just as well be twelve or twenty if the power exists to enact such an ordinance at all. In other words, the character of the ballot to be voted at a general election when the governor and other state officers and the electors for president are to be chosen would be largely under the control not of the legislature but of five per cent of the voters of the city. I refer to this objection to the ordinance under consideration to show that the legislature could not have intended, under any general grant of power to enact ordinances, to authorize local legislation by municipalities repugnant to the public policy of the state and the spirit of its Constitution and its general laws.

If the foregoing views are correct they require a negative answer to the first question which has been certified to us by the Appellate Division, to wit: "Did the common council of the city of Buffalo have the power to enact chapter XLV of the ordinances?"

The second question is: "Has the said ordinance been ratified by subsequent legislative enactments?" This question should also be answered in the negative. In the year after it was adopted the ordinance was the subject of judicial consideration at a Special Term of the Supreme Court in Erie county in an unreported case

decided by Mr. Justice KRUSE (*People ex rel. Stockton v. Emerson*). A copy of the opinion is annexed to the brief for the appellant. The court permitted the submission to the voters of the question whether the city of Buffalo should own and operate an electric light and power plant for the benefit of itself and its inhabitants; but declared it unnecessary to determine whether the ordinance was valid "to the extent of submitting every question of public policy that might arise, regardless of the immediate concern of the interests of the municipality." The learned judge, nevertheless, did refuse to permit the submission of two other questions, which five per cent of the registered voters had petitioned to have submitted, on the ground that they involved questions of legislation over which the common council had no power and hence were not "germane." Concededly, therefore, this decision did not sustain the ordinance without qualification, nor is it controlling here. I think an ordinance is to be construed as a whole and according to the ordinary meaning of the language used therein. If it is bad when thus construed, it cannot be made good by judicial limitation.

Although the existing charter of the city, which took effect in 1914, did provide that the ordinances in force at the time the act took effect which were not inconsistent therewith were thereby continued in force until such time as they might be altered, amended or repealed by the common council, I have endeavored to show that the ordinance in question was not and is not in force, having been enacted without authority, and that it is inconsistent with the new charter, because the latter by implication forbids any local legislation providing for a referendum. A statutory provision that ordinances "now in force" shall remain in force until altered or repealed does not validate a void ordinance. (*East Tennessee Telephone Co.* v. *City of Russellville*, 106 Ky. 667, 673.) It follows that the ordinance is not now in force and that the

defendant has properly been restrained from publishing the notices thereunder.

From what has been said it must not be inferred that we question or doubt in the slightest degree the power of the legislature to provide for an advisory referendum if it sees fit so to do as an aid to the proper performance of its own work or that of minor local legislative bodies. All we hold in the present case is that it has not delegated the power to provide for such a referendum in Buffalo to the common council of that city. It certainly has not done so in express terms; and we think it equally clear that it has not done so by implication. Perhaps the most striking example of a useful advisory referendum is in the case of the city of New York, where the legislature by statute provided for taking a popular vote upon the question of consolidation in the several territorial units which now constitute the greater city. (Laws of 1894, chap. 64.) That act was passed pursuant to a recommendation of the consolidation commission after the question had been a subject of consideration by the legislature for several years.

The order, so far as appealed from, should be affirmed, with costs; the first, second and third questions certified should be answered in the negative, and the fourth question in the affirmative.

POUND, J. (concurring in result). I think that the ordinance providing for an advisory initiative at any election on not more than three questions of public policy, if they are closely allied to the exercise of the corporate powers and the performance of the corporate duties of the city of Buffalo, was in force when the new charter took effect and was, therefore, continued in force within the meaning of subdivision 11 of section 13 thereof. It creates no offense, imposes no liability. It deals with a matter of local policy. The legislative policy favors full power to cities in their local affairs. (L. 1913, ch.

247.) The compulsory referendum provided for by the new charter is different in its object and effect. Under its provisions the electors by their vote at the ballot box directly exercise legislative power. Under this ordinance they give advice or indicate public sentiment.

The city is authorized by the charter (§ 363) to "purchase, construct, maintain and regulate works to provide the city and its inhabitants with light." The question of such municipal ownership and operation was a proper one to submit. Question No. 3 is, however, argumentative in form. When it asks: "Shall the city of Buffalo own and operate an electric plant * * * *in order to produce revenue and thus lower the city taxes*," it assumes that the city taxes would be lowered and thus it begs the very question which it purports to submit by assuming in the premises the conclusion which it is desired to prove. This was the fourth of Aristotle's fallacies and a well-known lure in disputation. (21 Ency. Brit. [11th ed.] 307.) The question should be plainly stated without this qualification.

I, therefore, vote for affirmance.

HISCOCK, COLLIN, CUDDEBACK and HOGAN, JJ., concur with WILLARD BARTLETT, Ch. J., and CARDOZO, J., concurs in result; POUND, J., concurs in result, in memorandum.

Order affirmed.