GEORGE T. REYCROFT, Plaintiff, *v.* CITY OF BINGHAMTON and Others, Defendants.

Supreme Court, Broome County, November 3, 1930.

*Arthur J. Ruland* [*Herman F. Nehlsen* of counsel], for the plaintiff,

*Edwin H. Moody, Corporation Counsel,* for the defendant City of Binghamton.

*Clarence L. Chamberlain, County Attorney,* for the defendants Van Valkenburgh and Kelly.

PERSONIUS, J.   The common council of the city of Binghamton has passed a resolution providing for the submission to the electorate of the city at the general election to be held November 4, 1930, of the question as to whether motion picture theatres shall be

permitted to operate on Sunday. The power of the common council to pass on this question is found in section 2154 of the Penal Law. That section, however, gives the council no power to authorize the submission of the question to the electorate. This is a taxpayer's action brought to restrain such referendum on the ground that the resolution is unauthorized and void.

Neither a municipal corporation nor its officers can do any act which is not authorized by its charter or by some other legislative act. (Dillon Mun. Corp. § 237 *et seq.*) We can find no legislative act authorizing the city of Binghamton, or its common council, to require or provide for the submission of this question to the voters; no such authority has been called to our attention. It follows that the resolution passed by the common council is unauthorized. Being unauthorized, it is void. (*Mills* v. *Sweeney*, 219 N. Y. 213; *People ex rel. Casler* v. *Eysaman*, 126 Misc. 853, 854; *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 413; Attorney-General's Opinions, 1921, p. 363.)

In *Mills* v. *Sweeney* (*supra*) the common council of the city of Buffalo had enacted a general ordinance providing for the submission of any question of public policy to the electorate. The Buffalo charter contained a provision giving the common council quite general authority to enact ordinances. Nevertheless, the Court of Appeals held that the Legislature had not conferred upon the Buffalo common council ": authority to enact an ordinance involving a referendum of any kind," and that, therefore, the common council's attempt to do so was void.

*Matter of McCabe* v. *Voorhis* (*supra*) did not involve a similar referendum, but the Court of Appeals said, generally: " The power to provide for a referendum must be found in the City Home Rule Act. * * * Otherwise it is unauthorized. Direct legislation in cities must always rest on some constitutional or statutory grant of power. Government by representation is still the rule. Direct action by the people is the exception." Concededly the City Home Rule Law (Laws of 1924, chap. 363, as amd.) has no application here. No provision is there made for an advisory referendum. Furthermore, it is not clear that the City Home Rule Law applies to the matter in question.

We, therefore, conclude that the legislative body of the city of Binghamton was without power to provide for this referendum and it is, therefore, void.

There is another objection to this referendum. Article 12, section 6, of the Constitution provides that all elections of city officers shall be held in an odd-numbered year. Our courts have held that it is the policy of the Constitution to prohibit the election of city

officers at an election of State officers in even-numbered years, and that the same policy forbids voting upon municipal questions at such elections. (*Mills* v. *Sweeney, supra.*) Of course, this is an even-numbered year and State officers are being elected. The Constitution, as construed by our Court of Appeals, therefore, seems to prohibit the submission of a municipal question at this election.

In passing, attention is properly called to the fact that a percentage of the electorate would be prevented from voting upon this referendum. Ballots for absentee voters must be prepared and issued some time in advance of the election. It so happens that, in this instance, it was necessary to deliver them without placing the question thereon. Absentee voters, therefore, have no opportunity to express themselves on the question. This group may be small, but it was entitled to vote upon every question submitted. We do not refer to this as a controlling factor, but rather to illustrate the importance of a legislative act authorizing such advisory referendum. In such an act the Legislature would naturally, when granting such authority, make provision for the lapse of sufficient time to enable the election commissioners to prepare the absentee ballots in time.

A temporary injunction should be granted.