LYNN W. HATHAWAY, Plaintiff, *v.* CITY OF ONEONTA and Others, Defendants.

Supreme Court, Otsego County, July 20, 1933.

*Frank C. Huntington* [*Sterling P. Harrington* of counsel], for the plaintiff.

*Julian B. Jackson*, for the defendants.

*Donald H. Grant, amicus curiæ.*

McNAUGHT, J. The common council of the city of Oneonta has provided by resolution that a special election be held in that city on the 25th day of July, 1933, for submission to the electorate of a proposition whether the exhibition of motion pictures shall be permitted on the first day of the week. The resolution providing for such election specifies the " qualifications of the voters at said Special Election shall be the same as provided by the laws of the State for a General Election, and that the number and location of the polling places be the same as those designated at the last General Election held in this city," and further, that the holding of said special election is " conditional upon the deposit with the City Chamberlain of the City of Oneonta, New York, of a certified check of the interested theatres covering the estimated expense of said Special Election within 10 days from the date of the adoption of this resolution." The affidavits submitted upon this motion set forth that such certified check has been deposited with the city chamberlain.

Plaintiff has commenced this taxpayer's action to restrain and enjoin the holding of such election. It is contended by plaintiff that the proposed election is illegal, without statutory authority, contrary to the public interests, and a threatened waste of public funds. He seeks a temporary injunction pending a determination of the action.

The defendants and others interested contend that the election, while not specifically provided for by statute, is desirable and proper for the information of the members of the common council in performance of the duties imposed upon them; that there is no waste of public funds possible, as all expenses are to be borne by the commercial interests affected, and that plaintiff has no standing to maintain this action, mere illegality being insufficient, unless accompanied by waste of public funds or financial loss to the taxpayers.

The court is not concerned with the different viewpoints as to the propriety or desirability of permitting the public to enjoy the privilege of entertainment on the first day of the week in a manner

authorized by law. It is well known that in the great body of the citizenry of our communities there are those who feel that in the march of time certain rights and privileges denied the individual citizen in the past should be granted in the interests of the welfare of all, while others, believing in the more severe and rigorous restrictions of the past, deem their continuance of vital importance to the wellbeing of society. We are here only concerned with the legal questions involved and seek to apply to the issue presented that rule which statutory enactment and the decisions of our courts require.

It is provided by section 2154 of the Penal Law: " If in any city, town or village motion pictures are now exhibited on the first day of the week, they may continue to be so exhibited during such time after two o'clock in the afternoon as the exhibition of motion pictures shall not have been prohibited  *  *  *. If in any city, town or village motion pictures are not now exhibited on the first day of the week, they shall not be so exhibited except during such time after two o'clock in the afternoon as shall be permitted by an ordinance hereafter adopted by the common council or other legislative body of such city, town or village, the adoption, repeal or readoption of which is hereby authorized." There is no provision in this section, or in any other statute, for the submission to the electorate of a proposition as to whether the municipal body vested with such authority shall grant such permission or not. The discretion and the power is vested solely in the common council in a city. The duty of determination rests upon the members of that body as the duly elected representatives of the people. A vote by the electorate for or against granting such permission can have no effect, carries no authority, and is an absolute nullity so far as enactment by the common council is concerned.

The common council is a creature of statute. It has been formed and organized for certain definite and specified purposes. It is charged with the administration of the affairs of the municipality in the manner provided and under the authority of statute. It is bound to act in its administration in conformity to the statute. When and if the act of the common council is without effect; when and if it is without authority of law; when and if it is contrary to public interest as being illegal, it is void. If the act is void it can have no effect and that which it seeks to do cannot and should not be done. (Dillon Mun. Corp. [5th ed.] § 601, § 237, *et seq.; Mills v. Sweeney*, 219 N. Y. 213; *Matter of McCabe v. Voorhis*, 243 id. 401, 413.)

It is claimed, however, that as the act sought to be restrained (holding a special election) can have no legal effect; as it is to be

held without expense to the city, and, therefore, cannot result in a waste of public funds; as it will merely be informative to the members of the common council as to the wishes of the electorate, the court is without power to enjoin pending the determination of the action, but should further the purpose of allowing expression to the wishes of the electorate.

Cities are formed and organized pursuant to the provisions of legislative enactment. Their form of government is specified; the power and authority of their officials are prescribed; the duties and responsibilities of such officials are provided for by statutory enactments. Cities, like other governmental units under the American system, still have a representative form of government. Direct action by the electorate has not yet been adopted in the government of the municipalities of the State of New York, and is only permissible when specifically provided for by statute. (*Mills* v. *Sweeney, supra,* at pp. 217, 218.)

We, therefore, conclude that there being no statutory authority for the submission of the proposition at the special election which has been called, the action of the common council was unauthorized and is void.

The plaintiff, a citizen, a voter, and an interested taxpayer, has brought this action to have the resolution of the common council declared illegal and the holding of the special election called pursuant to it permanently enjoined. He now seeks a temporary injunction restraining the authorities from carrying the resolution into effect pending determination of the action. The plaintiff is qualified to bring the action. (General Municipal Law, § 51.) The "affairs and government" of the city of Oneonta are directly concerned. The operation of its form of government is involved. The property rights and the general civic interests of the plaintiff, as well as of all the citizens of Oneonta are affected. The plaintiff seeks to prevent " illegal official acts " (General Municipal Law, § 51) on the part of the city officials who are officers of the municipality. The alleged illegal acts threatened may be " injurious to municipal and public interests " (*Western N. Y. Water Co.* v. *City of Buffalo,* 242 N. Y. 202), and in that respect the case under consideration is distinguishable from the one cited. The complaint does not in terms allege that the holding of the special election will be " injurious to municipal and public interests," but the general intendment of the allegations is to that effect.

At common law a taxpayer could not maintain a suit against a public officer to restrain an illegal act, or to prevent waste of public funds. This unsatisfactory condition was changed by the enactment of the first statute authorizing a taxpayer's action in this

State. (Laws of 1872, chap. 161.) Various amendments have extended the scope of this Act and the remedial statute under which a taxpayer may act is now contained in substance in section 51 of the General Municipal Law. The history of the legislation and the reasons which led to its enactment have been fully discussed by the courts. (*Talcott* v. *City of Buffalo*, 125 N. Y. 280, 285; *Rogers* v. *O'Brien*, 153 id. 357, 361; *Altschul* v. *Ludwig*, 216 id. 459, 464.)

The attention of the court has been called, upon the argument, to many of those authorities in which it has been held that an allegation of mere illegality is insufficient for the maintenance of a taxpayer's action. (*Rogers* v. *O'Brien, supra; Altschul* v. *Ludwig, supra; Southern Leasing Co.* v. *Ludwig*, 217 N. Y. 100; *Western N. Y. Water Co.* v. *City of Buffalo, supra; Blanshard* v. *City of New York*, 141 Misc. 609.)

We recognize the rule enunciated is without question the law of this jurisdiction, but when urged in its entirety and without qualification, it fails to take into consideration that illegality coupled with an allegation of injurious effects upon the public interests is likewise an equally potent and well recognized rule. " The mere illegality of the official act in and of itself does not justify injunctive relief at the request of the taxpayer. To be entitled to this relief, when waste or injury is not involved, it must appear that in addition to bring an illegal official act the threatened act is such as to imperil the public interests or calculated to work public injury or produce some public mischief." (*Altschul* v. *Ludwig, supra*, 467, citing cases.) (See, also, *Bush* v. *Coler*, 60 App. Div. 56; affd., 170 N. Y. 587; *Bush* v. *O'Brien*, 164 id. 205.)

What is in the public's interest in the administration of its affairs? The operation of its governmental system in accord with and in conformity to the law, not operation in an unauthorized and void manner. The performance of duty, the exercise of vested authority in the administration of civic affairs by the duly chosen representatives of the people; the operation of its governmental functions not only by its proper officials, but by the payment of its governmental expenses by the use of its own governmental funds. It is clearly not in the public interest that the system of government designed by law for a body of citizens organized and formed into the municipal corporation known as the city of Oneonta, should have added to it foreign excrescences in the form of mass action upon matters requiring the performance of official duty, especially when such proposed action is beyond question, no matter what the result of the vote might be, a mere *brutum fulmen*.

A void act, unauthorized by statute, taken in reference to

governmental functions, to our mind, does produce some "public mischief." An attempt to take nugatory action in the form of a legal proceeding to submit for the determination of citizens a question which they cannot determine, but which by such action they are led to believe they can determine, certainly, to our mind, produces some "public injury." "Imperiling the public interests, producing some public mischief, or working some public injury," does not depend entirely upon a waste of public funds, a financial loss or gain, the creation of conditions detrimental to health, but goes farther and extends to changing, altering, or attempting by void action, to do something which is without authority of law and without the grant of specific power.

"Ever since the referendum has found recognition in the political system of this state it has been the policy of the legislature to deal with it directly and in expense terms, and not delegate the right to adopt it to inferior legislative bodies." (*Mills* v. *Sweeney, supra,* p. 217.)

We are advised, however, the court is without authority to enjoin the holding of such election pending the determination of this action. We are not convinced this is a correct exposition of the law. We have sought to point out that this action is, in our opinion, maintainable; that if the allegations of the complaint are true, the acts of the common council were illegal and the holding of the election would not only be an unauthorized, but a void act. If so, this court clearly has the power, pending the determination of the action, to exercise its inherent jurisdiction and prevent, until that determination, the doing of the illegal and void act. Otherwise, the courts would be a most impotent and ineffective instrument in the administration of justice.

In addition to the reasons we have stated for granting the motion, there are two insuperable objections to allowing, pending the determination of the action, further proceeding with the proposed special election. The objection that there is no provision for absentee voters to cast their ballots upon the proposition does not seem to us at all conclusive. There is no provision, as we understand, in the charter of the city of Oneonta in relation to absentee voting upon propositions which may be submitted to the electorate, nor has such a provision been called to our attention. The resolution, however, provides that the qualifications of voters at the special election shall be the same as provided by the laws of the State for a general election. A qualified voter, under this resolution, voting on the 25th day of July, 1933, would be required to possess the qualifications of a voter at a general election, which would be over the age of twenty-one years, residence in the State for one year, in the county for four months, and in the election district

for thirty days, and personal registration being required to entitle a voter to cast his or her ballot in the city of Oneonta, *the name of such voter would have to be registered.* There is no registration provided for, and there is no registration of the voters who would be qualified to vote in their respective election districts on the 25th day of July, 1933. In such a situation it is manifest that by the terms of the resolution adopted by the common council, many citizens of Oneonta would be disqualified from casting their ballots, and there being no registered voters for the election on the 25th day of July, we are unable to see how there would be any voters in the city of Oneonta qualified on that day to vote as *at a general election.*

It also appears from the papers submitted on this motion and from the resolution of the common council itself, that the action was conditional upon the deposit with the city chamberlain of the city of Oneonta, N. Y., of a certified check of " *the interested theaters,*" covering the estimated expense of said special election. We believe it " imperils public interest," it produces " public mischief," and it may well " work public injury " (*Altschul* v. *Ludwig, supra,* 467) to permit the official acts of the common council of a city to be carried into effect conditioned upon a private and commercial interest affected thereby defraying the expenses to be incurred by the act which is contemplated. An election is a governmental function. It is called pursuant to law. It is held under governmental regulation by statutory enactment. The ballots of the citizens are received by public inspectors of election. The results of the election are determined by public officials. It is an act of government, a function of government, and should be paid for as a part of the expenses of government. It would be a " public mischief " and work " public injury " to permit the avoidance of a waste of public funds to do a void act, by the subterfuge of allowing commercial interests involved to defray the expenses incident to doing the act. Is not such a procedure more than a public mischief? Does it not imperil the public interests? Does it not work some public injury? If by this procedure the illegality of the act can be avoided, special elections might be called in municipalities at the solicitation of the interests affected for any conceivable purpose, providing such interests defrayed the cost of the election. A municipal governing body could be instructed as to its traffic and parking regulations at the instigation of an automobile club defraying the cost of a special election. A private interest affected by a zoning ordinance could have the electorate determine the provisions of a zoning ordinance, providing it defrayed the cost of the election. Building concerns could in like manner cause the Building Code of a city to be voted upon. Illustrations might be multiplied, but sufficient has been indicated to disclose the effect.

The questions here presented, while the facts were not identical, were passed upon to the same effect by Mr. Justice PERSONIUS of this judicial district in *Reycroft* v. *City of Binghamton* (138 Misc. 257).

It seems to us the plaintiff has a right to maintain this action; that the allegations of the complaint, broadly and liberally construed, are sufficient to state an alleged cause of action; that upon the facts appearing before this court under the law and the authorities, the special election called to be held in the city of Oneonta on July 25, 1933, is unauthorized by law, and the action of the common council in calling such election is void; that while no waste of public funds is definitely shown, it has not been unquestionably established there are not intangible wastes, or that the fund deposited to defray the expenses of the election is sufficient to cover all expenses. We are convinced that the qualifications of voters prescribed is such as to disfranchise many citizens from casting their ballots and is discriminatory. We are further convinced that to permit the official action of a common council directing the holding of a special election to be conditioned upon private interests defraying the expenses of a public governmental function, imperils the public interests, produces public mischief, works public injury, and is detrimental to good government.

Temporary injunction pending the determination of the action should be and hereby is granted.

Submit order to such effect.