In the Matter of the Application of WILLIAM LYNCH, JR., Petitioner, for a Mandamus Order against THOMAS P. O'LEARY, City Clerk of the City of Rochester, New York, Respondent.

Supreme Court, Monroe County, March 3, 1938.

George Hoffenberg, for the petitioner.

William H. Emerson, Corporation Counsel, for the respondent.

VAN VOORHIS, J. This controversy arises out of the following circumstances:

In 1925 the city manager form of government was adopted by the city of Rochester. This was accomplished by amending fundamentally the provisions of the city charter. Although the charter was orginally enacted by the Legislature, these amendments were not made by the Legislature but by the governing body of the city, then known as the common council, pursuant to authority granted by the Legislature under the City Home Rule Law, which was adopted in order to carry into effect the Home Rule Amendments to the State Constitution (Const. art. 12, §§ 1–7) and which invested the new provisions with the force of statute.

Section 82 of the new charter provides that the city manager shall be responsible to the council for the administration of all city affairs, and that he shall have power, and it shall be his duty " (b) to appoint and remove the heads of all departments, the members of all boards, and all subordinate officers and " employees except as otherwise provided in this local law." The exceptions referred to do not relate to matters now in controversy. Under this provision the city manager is authorized to appoint and remove all of such city officers and employees according to his judgment. Where the term of appointment is not specified by law the appointee's term is during the pleasure of the authority making the appointment who may remove the appointee at any time. (People ex rel. Ryan v. Wells, 178 N. Y. 135.)

On October 29, 1937, the city council adopted what was in effect an amendment to the city charter in the form of a local law curtailing the powers of the city manager by providing that " no person holding a position in the employment of the City of Rochester, which position is classified pursuant to the Civil Service Law of the State of New York in the labor class, shall be removed from such position except for inefficiency, incompetency, insubordination or misconduct and upon stated written charges after a hearing." The reference to the Civil Service Law describes the people affected by

the local law and does not indicate that they occupy protected civil service positions.

On January 11, 1938, a local law was adopted by the city council further amending the charter of the city by repealing the said local law adopted October 29, 1937.

On January 6, 1938, a petition was filed with the city clerk purporting to be done in pursuance of sections 120 to 123 of the city charter relating to the initiative. This petition called upon the city council to adopt a proposed ordinance set forth therein which provides that " the so-called merit system in relation to the labor class of the City of Rochester as established by Local Law No. 216 and enacted on October 29, 1937, shall continue in force and shall continue to be the policy of the City of Rochester, New York." The sections of the charter referred to provide that any ordinance except ordinances relating to subjects not here involved may be introduced into the council by petition of electors who are not fewer than ten per cent of the voters who registered for the last preceding general election, and that, in event that the council shall reject an ordinance so initiated, it may be presented to the electors at the next general election, and shall be considered adopted if a majority of the votes cast are for it. It is further provided by section 122 that the city clerk shall examine any initiating petition filed with him, and shall transmit to the council, at a regular meeting held not later than twenty days from the date of the filing of the petition, a copy of the initiated ordinance, and a certificate that he has examined the petition and has found that it complies or does not comply, as the case may be, in all respects with the requirements of the charter.

The city clerk has not transmitted to the council a copy of the said initiated ordinance, nor has he certified that the petition in which it is set forth complies or does not comply with the formal requirements of the charter, although more than twenty days have expired since the date on which the petition was filed. Furthermore, he has refused to do so acting under advice from the corporation counsel upon the grounds that the proposed ordinance, if adopted, would be a nullity, and that the provisions in the charter relating to the initiative are void.

The mandamus proceeding above entitled is commenced by a resident elector of the city of Rochester to compel the city clerk to transmit a copy of the ordinance to the council together with his certificate that he has examined the petition and has found that it complies or does not comply, as the case may be, with the requirements of the city charter.

Inasmuch as the language of section 122 of the city charter requires the city clerk to certify to the council that the petition complies or else that it fails to comply with the requirements of the preceding section, he must be compelled to do so in this proceeding unless the proposed ordinance would, if adopted, be invalid, either by reason of the form or subject-matter thereof, or by reason of the invalidity of the provisions of the charter under which it is presented.

(a) The proposed ordinance attempts to alter the provisions of the city charter relating to the powers of the city manager by limiting his authority thereby conferred to discharge certain employees. Before the adoption of the City Home Rule Law it was unquestionably beyond the powers of the local governing body of a city by any action of its own to amend a city charter which had been adopted as an act of the Legislature. Such local bodies have long been empowered to adopt local acts of a legislative nature, known as ordinances, provided that such local legislation is authorized by and does not conflict with State statute. (*Mills* v. *Sweeney*, 219 N. Y. 213, 216; *Armatage* v. *Fisher*, 74 Hun, 167, 172.) When the City Home Rule Law was passed by the Legislature, it expressly preserved to the local governing bodies of cities the same power to enact ordinances which they had possessed before (§ 10). It did more than this, however. It provided that " the local legislative body of a city shall have power to adopt and amend local laws in relation to the property, affairs or government of a city " (§ 11), which are given the force of State law, superseding conflicting special or local acts of the Legislature (§ 12). Special procedure is prescribed for the adoption of local laws which differs from the procedure that cities are at liberty to provide for themselves for the passage of ordinances. For example, the statute is mandatory that local laws shall not be passed except by the affirmative vote of a majority of the total membership of the city council (§ 13), whereas cities by local law duly adopted, may, if they choose, authorize ordinances to be passed by a majority of a quorum attending a meeting (§ 10).

It has been held that Local Law No. 4 of the city of Rochester, adopted in 1925, in so far as it established the powers of the city manager, acquired the force and effect of State statute. (*Bareham* v. *City of Rochester*, 246 N. Y. 140.) Undoubtedly the city council has power to alter these provisions by local law. They cannot be amended by ordinance for the reason that no State statute can be amended by ordinance. They cannot be amended by an ordinance adopted by the People any more than they can by an ordinance adopted by the council. The fact that these sections of the charter call for a referendum to the People only in case the council shall

have failed to pass the same proposition *as an ordinance* indicates that action thereon by the People has the same force and no greater than though the council had acted under the ordinance-making power. The question immediately before the court is whether the provisions of the charter regarding the initiative provide for the enactment by direct action of the People of local laws or merely of ordinances. All legislative power is derived from the People, but they ordinarily act through their elected representatives. Do sections 120 to 123 confine the initiative to such local legislation as can be adopted by municipalities in subordination to State or local law which is described by the name of " ordinance," or do these sections apply also to the newly acquired powers of the council to enact local laws which take the place of statute and have the same sanction as though enacted by the Legislature itself? The construction rather than the validity of these sections is now under consideration.

It seems to the court that the framers of the new charter in confining the initiative to what are there termed ordinances (§ 120) must have used the word in its understood meaning. In drafting the charter they had before them the City Home Rule Law, which had been adopted the year before, and upon the authority of which the new charter was founded. That statute in express terms defined and distinguished between ordinance and local law. " As used in this chapter, (1) the term ' local law ' means a law adopted pursuant to this chapter by the local legislative body of a city * * * but does not include an ordinance of the * * * council of a city * * * adopted pursuant to authority reserved to it by section ten of this chapter or conferred upon it by local law." (City Home Rule Law, § 2.) The framers of the charter used the term " ordinance " in the same sense in which it was employed in the City Home Rule Law. That they did so is indicated by the section of the charter (118) which comes immediately before those relating to the initiative. It says: " All legislative acts of the Council shall be by local law as provided in chapter 363 of the Laws of 1924 (City Home Rule Law) *or* by ordinance." This shows that the term " ordinance " is not intended to include local law but is used in contradistinction to it.

It has been pointed out above that the power of the city manager to employ and discharge city employees at any time has been created by local law having the force of statute and cannot be modified by ordinance. As stated by Justice KNAPP in *Matter of Fulreader* v. *O'Leary* (an unreported decision filed in Monroe county clerk's office on Oct. 20, 1932): " The city charter of the City of

Rochester is an instrument which has the dignity of State legislation and is the very source of the ordinance-making power. It seems manifest to me that an ordinance cannot be passed by the common council which is repugnant and in contravention to the very provisions of the charter itself." It follows that the ordinance proposed by the petitions filed with the city clerk January 6, 1938, would be null and void if adopted. To compel the city clerk to transmit the ordinance to the council and certify the petitions would be to require him to perform a meaningless act for which mandamus is never granted. (*People* v. *Tremain,* 29 Barb. 96, followed in *Matter of Gordon* v. *Hoffman,* 247 App. Div. 819; *Matter of Lindgren,* 198 id. 319, 323; appeal dismissed, 232 N. Y. 59; *Matter of Ottinger* v. *Voorhis,* 241 id. 49; *Matter of McCabe* v. *Voorhis,* 243 id. 401, 411.)

The city council appear to have acted upon this principle both before and after January 1, 1938. The limitations upon the discharge of employees were enacted by local law on October 29, 1937. They were repealed by local law on January 11, 1938. In neither instance did the council proceed by ordinance.

(b) The application for mandamus must be denied upon the further ground that sections 120 to 123 of the Rochester City Charter relating to the initiative, even if construed broadly enough to cover the initiation of local law, are not authorized by the City Home Rule Law and are, therefore, void. Their effect is to enable the voters of the city to go over the heads of their elected representatives and wield legislative power by direct action. All legislative power originates in the people. That is the basis on which democratic government rests. Ours is a representative democracy, however, under which the will of the people is carried into effect by orderly procedure. The power of the People to legislate was conferred by the Constitution upon the Legislature, where it remains, except in so far as the Constitution has been amended or except as some of it has been delegated by the Legislature within constitutional limits. (State Const. art. 3, § 1.) As was stated by the Court of Appeals in an opinion by Chief Judge RUGGLES in a famous case (*Barto* v. *Himrod,* 8 N. Y. 483, 489): " The Senate and Assembly are the only bodies of men clothed with the power of general legislation. They possess the entire power with the exception above stated. The People reserve no part of it to themselves excepting in regard to laws creating public debt; and can, therefore, exercise it in no other case."

In *People ex rel. Unger* v. *Kennedy* (207 N. Y. 533, 544) it was stated per HISCOCK, J.: " The proposition that by our Constitution

general powers of legislation are conferred exclusively upon the Legislature and that this body may not escape its duties and responsibilities by delegating such legislative powers to the People at large, must be regarded as so thoroughly established that it needs no discussion."

In 1923 the Home Rule Amendment to the State Constitution was ratified and took effect (Const. art. 12, §§ 1–7). The result was to deprive the Legislature of the legislative power which it had theretofore possessed to pass special or local laws relating to the property, affairs or government of cities. The power to pass general laws applicable alike to all cities was retained. To the extent which the Legislature might authorize, it was provided that every city shall have power to adopt and amend local laws having the force of statute not inconsistent with the Constitution and general laws of the State. No opinion is here expressed concerning whether the provision (Art. 12, § 3) that " every city shall have power to adopt and amend local laws " is broad enough to empower the Legislature to provide for the adoption of local laws by the People themselves through the initiative. But however that may be, with the exception of one instance hereinafter referred to, the Legislature has not done so. The enabling act (City Home Rule Law) does not confer these powers upon the People of the several cities but upon the local legislative bodies thereof. As said by Justice KNAPP in *Matter of Fulreader* v. *O'Leary (supra)* : " Under chapter 363 of the Laws of 1924, as amended by chapter 397 of the Laws of 1925, known as the City Home Rule Law, I have been unable to find any provision that conferred upon the people of the city of Rochester any power to initiate a local law by direct action of the people. Section 11 of that act, which provides for the powers of the cities to adopt and amend local laws, provides that the local legislative body of the city shall have power to adopt and amend local laws in relation to the property, etc., of the city. The validity of every local law must be tested by the Constitution of the State and by the City Home Rule Law. Neither a municipal corporation nor its officers can do any act which is not authorized by its charter or by some other legislative act. (*Reycroft* v. *City of Binghamton,* 138 Misc. 257.) "

In *Hathaway* v. *Oneonta* (148 Misc. 695, 698) it is held: " Cities, like other governmental units under the American system, still have a representative form of government. Direct action by the electorate has not yet been adopted in the government of the municipalities of the State of New York, and is only permissible when specifically provided for by statute."

In *Matter of McCabe* v. *Voorhis* (243 N. Y. 401, 413) the court had occasion to observe: " Direct legislation in cities must always rest on some constitutional or statutory grant of power. Government by representation is still the rule. Direct action by the people is the exception." '

Such an exception may be noted in section 19-a of the City Home Rule Law, added by chapter 479 of the Laws of 1937, which provides for the adoption by the initiative of local laws amending city charters. The procedure is materially different from that set forth at sections 120 to 123 of the Rochester charter and requires petitions containing the signatures of at least fifteen per cent of the total number of votes cast in the city for Governor at the last gubernatorial election before a proposition so initiated can be submitted to popular vote. No claim is made that petitions filed with the city clerk January 6, 1938, comply with this section. The amendment to the statute would have been unnecessary if cities already possessed similar power. The resulting situation is that sections 120 to 123 of the city charter purporting to have been adopted pursuant to the City Home Rule Law are in conflict with section 19-a of the City Home Rule Law. The former requires signatures of not less than ten per cent of the voters who registered for the last preceding general election. The latter requires two petitions with signatures which must without overlapping equal in the aggregate fifteen per cent of the total number of votes cast for Governor at the last gubernatorial election. To uphold these charter provisions would sanction initiatory petitions which make no claim to having the number of signatures required by the State law. Such a conflict demonstrates that the charter provisions were invalid when passed, or else were repealed by implication in 1937 by the general State statute.

Although this application is for a peremptory, or failing that, for an alternative mandamus order, which is a special proceeding that has been abolished by chapter 526 of the Laws of 1937, it has been dealt with as though it were for an order under the new procedure provided for by the same act.

The application is denied.