CITY OF BUFFALO, Plaintiff, *v.* JAMES R. LAWLEY et al., Constituting the Board of Elections of the County of Erie, Defendants.

Fourth Department, June 19, 1958.

*Anthony Manguso*, Corporation Counsel (*Leonard Schoenborn* of counsel), for plaintiff.

*Elmer R. Weil*, County Attorney (*George M. Nelson* and *Wortley B. Paul* of counsel), for defendants.

*Louis J. Lefkowitz*, Attorney-General (*Matthew A. Tiffany* and *Paxton Blair* of counsel), *amicus curiæ*.

HALPERN, J. The question presented is whether a referendum with respect to the authorization of the playing of bingo in the city of Buffalo may be held at the general election on November 4, 1958.

Section 9 of article I of the New York State Constitution, as amended in 1957, provides in part that " any city, town or village within the state may by an approving vote of the majority of the qualified electors in such municipality voting on a proposition therefor submitted at a general or special election authorize, subject to state legislative supervision and control, the conduct of specific games of, chance, commonly know as bingo or lotto ".

To implement this amendment, article 14-G, consisting of sections 475 to 499, was added to the General Municipal Law by chapter 854 of the Laws of 1957. Section 496 provides that the " article shall remain inoperative in any municipality unless and until a proposition therefor submitted at a general or special election in such municipality shall be approved by a vote of the majority of the qualified electors in such municipality voting thereon."

Section 478 of the General Municipal Law provides for the adoption of a local ordinance authorizing the conducting of the game of bingo within the territorial limits of the municipality and subdivision 2 of that section provides that " No such local law or ordinance shall become operative or effective unless and until it shall have been approved by a majority of the electors voting on a proposition submitted at a general or special election held within such municipality who are qualified to vote for officers of such municipality " (as amd. by L. 1958, ch. 143).

This case is before us upon an agreed submission of controversy pursuant to sections 546 to 548 of the Civil Practice Act. As stated in the submission, the City of Buffalo on April 1, 1958, passed an ordinance providing for the conducting of

bingo games in the city pursuant to the restrictive provisions of the ordinance and of article 14-G of the General Municipal Law and the provisions of the State Lottery Control Law (Executive Law, art. 19-B as added by L. 1957, ch. 853). The city proposes to submit at the general election to be held on November 4, 1958, the following question: "Shall § 29 of Article II of Chapter VII of the Ordinances of the City of Buffalo entitled 'Bingo,' providing for the playing of legal Bingo in the City of Buffalo, as enacted by the Common Council and approved by the Mayor on the first day of April, 1958, be approved and adopted, and shall the provisions of Article 14-G, §§ 475–499 of the General Municipal Law relating thereto be operative in said city?"

It will be noted that the proposition proposed to be submitted combines a referendum upon the question of whether article 14-G of the General Municipal Law should be made operative in the city with a referendum on the question of whether the ordinance adopted by the City of Buffalo should be approved. No objection has been raised to the combination of these two referenda and there appears to be no valid reason for refusing to permit such a combination.

The Commissioners of Elections, constituting the Board of Elections of the County of Erie, the defendants herein, contend that, since the year 1958 is an even-numbered year in which the election of State officers is to take place, it is improper to submit a local question to the electorate at the general election to be held this year, under section 15 of article IX of the State Constitution. The section, so far as here relevant, reads: "All elections of city officers, including supervisors, elected in any city or part of a city, and of county officers elected in any county wholly included in a city, except to fill vacancies, shall be held on the Tuesday succeeding the first Monday in November in an odd-numbered year, and the term of every such officer shall expire at the end of an odd-numbered year."

The section on its face applies only to the election of local officers and makes no reference to the submission of questions or propositions of a local nature. The language is clear and unambiguous and seems to be in no need of interpretation. "It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning" (*McCluskey* v. *Cromwell*, 11 N. Y. 593, 601; *Meltzer* v. *Koenigsberg*, 302 N. Y. 523, 525).

There is no justification in the text of the constitutional provision for a judicial extension of it to embrace local referenda,

as distinguished from the election of local officers. As the Appellate Division said in *Matter of Becker* (179 App. Div. 789, 792, affd. 221 N. Y. 681): "Assuming that it was the intent of the framers of the Constitution to introduce the division between local officers and State officers as to the time of their election, the Constitution also set bounds to the extent to which that principle shall be applied, and those bounds are found in the wording of the Constitution."

However, there are some Special Term decisions which extended the prohibition contained in section 15 of article IX to the submission of local propositions or questions (*People ex rel. Casler* v. *Eysaman*, 126 Misc. 853; *Reycroft* v. *City of Binghamton*, 138 Misc. 257; *Matter of Hughes* v. *Jenss*, 144 Misc. 270).

These decisions were based upon a dictum by Chief Judge WILLARD BARTLETT in *Mills* v. *Sweeney* (219 N. Y. 213, 219) to the effect that " The same policy " which forbids the choosing of city officers at an election of State officers, " forbids voting upon municipal questions at such elections ". This statement was made in the course of argument, as illustrating the danger of the confusion of State and local matters, if the city charter were construed as authorizing the city to hold local referenda on a great variety of public questions. This argument was put forward in support of the view, which the court adopted, that the then Charter of the City of Buffalo should be strictly construed as not authorizing the submission of questions to a public referendum at any time. There was no suggestion that, if a municipal referendum on a local question were explicitly authorized by a State statute, it would be invalid or violative of the Constitution to hold the referendum in an even-numbered year. On the contrary, the Chief Judge must have assumed that such a referendum could constitutionally be held during an even-numbered year; otherwise his argument for a strict construction of the city charter would have been self-defeating. If the constitutional provision were construed as forbidding local referenda in even-numbered years, there could not possibly be a confusion of State and local issues, even though the charter were liberally construed as authorizing local referenda.

Whatever doubts may have been created by the argumentative statement in *Mills* v. *Sweeney* were laid at rest by the subsequent decisions of the Court of Appeals. In *Salducco* v. *Etkin* (268 N. Y. 606, revg. 244 App. Div. 681), the Court of Appeals held that a referendum on the adoption of a plan of city government under the Optional City Government Law

(L. 1914, ch. 444) could legally be held on election day, November 6, 1934, despite the fact that 1934 was an even-numbered year.

In *Matter of Mooney* v. *Cohen* (272 N. Y. 33) the court upheld the submission of the present New York City Charter to the voters of the city at the general election in 1936, even though that year was an even-numbered year.

We approve the reasoning of the Special Term in *City of Syracuse* v. *Wright* (4 Misc 2d 714) upholding the constitutionality of the submission of a proposed charter amendment to the voters of the City of Syracuse under section 19-a of the City Home Rule Law, at the general election held in 1956.

There is another, and conclusive, reason for upholding the validity of the proposed submission of the bingo question in the city of Buffalo at the general election this year. Even if there were a constitutional provision generally prohibiting the submission of local questions in even-numbered years, the provision would not be applicable to a referendum under the bingo amendment to the Constitution, since that amendment in term specifically authorizes the submission of the question '' at a general or special election.'' There is no limitation in that amendment to elections held in odd-numbered years. This specific authorization would override any general pre-existing prohibition. The later specific expression of the public will would be controlling (*People ex rel. Williams Eng. & Contr. Co.* v. *Metz,* 193 N. Y. 148, 157; cf. *Matter of Adler* v. *Voorhis,* 254 N. Y. 375). '' The explicit language of a later statute should control the general language of an earlier enactment. (*East End Trust Co.* v. *Otten,* 255 N. Y. 283.) '' (*Gwynne* v. *Board of Education,* 259 N. Y. 191, 197.)

Judgment should be granted in favor of the plaintiff, the City of Buffalo, adjudging and ordering the defendant, the Board of Elections of the County of Erie, to place on the ballot to be voted upon by the electors of the City of Buffalo at the general election to be held on November 4, 1958, the proposed proposition relating to the legalization of bingo in the city of Buffalo.

All concur. Present — McCurn, P. J., Kimball, Bastow, Goldman and Halpern, JJ.

Submitted controversy determined in favor of plaintiff, without costs.