William E. Brennan, Je., J.
On April 16, 1962, the Village Board of Trustees of the Village of Freeport unanimously *1040 adopted a resolution which, provides that the acquisition, by purchase or condemnation, of 164 acres of land known as Cow Meadow lying outside the boundaries of the village, but wholly within three miles thereof, is thereby authorized (§ 1); then provides for the method of financing the project (§§ 2-9); and concludes, “ This resolution, before becoming effective, shall be approved at a special election of the qualified voters of the Village” (§10; emphasis supplied). The plaintiff brings this taxpayer’s action seeking to restrain the special election now scheduled for May 19, 1962 and presently seeks a temporary injunction for that purpose.
The plaintiff, contending that it is for the Village Board, not the voters of the village, to decide that the lands should bo acquired, suggests that the foregoing resolution, by making its effectiveness contingent upon voter approval, illegally submits to the voters the issue of acquisition as well as the question of approval of the method of financing.
Since the effectiveness of the entire resolution, without exception, is dependent upon the outcome of the- popular vote, it necessarily follows that that part thereof embracing the determination to acquire -is part of the submission to popular referendum. The question that remains is whether- such submission is unlawful.
Under article 5-A of the Village Law enacted in 1927 (L. 1927, ch. 650, § 19) a Village Board may cause to be submitted to referendum any resolution of the board against which a petition seeking a referendum may be filed. No authority has been cited for the proposition that an acquisition of park lands may.be the subject of a petition seeking a referendum (the applicable provisions relating to such acquisitions being contained in the Village Law, § 89, subd. 31, §§ 169, 290). However, following the enactment of the cited sections of the Village Law, section 36.00 of the Local Finance Law (entitled “Bond resolution subject to permissive referendum; villages ”) was amended in 1943 by adding subdivision b thereof which reads: 1 ‘ The expenditure of money for which it is proposed to issue obligations shall not be subject to a permissive or mandatory referendum in any village.” (L. 1943, ch. 711, § 16.) The later law makes it clear that the method of financing a project is subject to referendum in certain cases specified in the statute, but that the purpose of the expenditure is not.
The defendants recognize the significance of the distinction for they allege in their answering affidavit: “ But the proposed referendum is not for advice as to whether to acquire Cow Meadow (the Board has voted to do so by Section 1 of the Beso *1041 lution), it is for approval of the bond issue with which to pay for the acquisition.” The difficulty with this position is that the manner of presenting the resolution necessarily subjects to the referendum the issue of acquisition as distinct from, albeit together with, the issue of financing it. Although the defendants’ affidavit concludes: “ Section 10 may be a condition precedent to the bond resolution but not to the acquisition resolution ’ ’, the reading of section 10 establishes the fact to be otherwise.
The obvious fact which emerges through the shadows of the adopted procedure is that the Village Board has not determined to acquire Cow Meadow. It has merely indicated that if the People adopt the resolution the board will not oppose it. This puts the cart before the horse and constitutes an abdication by the Village Board of its responsibility to make a firm, unequivocal determination of whether or not to acquire the parcel. This responsibility of public officials cannot be avoided by obtaining an official, costly, public opinion survey in advance of a decision, however painful, which is imposed upon these officials by law. (Mills v. Sweeney, 219 N. Y. 213.)
The motion for a temporary injunction staying the referendum is granted effective forthwith.