LUCY MERCADO et al., as Parents of Children Attending a Public School in New York City Community School Board District 1, Appellants v. HARVEY B. SCRIBNER, as Chancellor of the Board of Education of the City of New York, et al., Respondents.

Second Department, April 5, 1972.

*Joseph Frost* for appellants.

*J. Lee Rankin, Corporation Counsel (Stanley Buchsbaum* and *Paula J. Omansky* of counsel), for respondents.

*Per Curiam.* This proceeding under article 78 of the CPLR was brought, *inter alia,* to declare the action of respondent Scribner appointing the other two respondents as trustees of the New York City Community School Board, District 1, null and void; and the appeal is from an order of the Special Term in Kings County which denied the application and dismissed the petition.

The appeal involves the issues (1) whether the petitioners have standing to bring the proceeding and (2) whether respondent Scribner has the power and authority to take the course of action that he did.

It appears that, following the resignation of two members of this nine-man Community Board, the board was unable to muster the five votes required to effectively perform its functions in the district (General Construction Law, § 41). Respondent Scribner in his capacity as Chancellor of the Board of Education of the City of New York met with the Community Board and attempted to reconcile the differences which existed among the seven remaining members. When this proved fruit-

less he ordered the Community Board to fill the two vacancies in accordance with its authority to do so under paragraph b of subdivision (34) of section 2590-c of the Education Law. When the Community Board failed to comply with this directive and the stalemate was not alleviated, Chancellor Scribner appointed respondents Applewhaite and Haughton as trustees for the sole purpose of voting with the remaining seven members of the Community Board for the election of two members to fill the vacancies.

In an appeal to the City Board acting as an appeal board, several members of the Community Board questioned the authority for the procedure adopted by the Chancellor and the propriety thereof. The City Board upheld the Chancellor's action and a further appeal was taken to the Commissioner of Education of the State of New York. That appeal is still pending.

The present proceeding was commenced after the affirmance by the City Board and following the denial of a stay, pending appeal, by the Commissioner of Education. The petitioners are parents of children attending schools located within Community School District 1. They alleged in their petition and contend on this appeal that Chancellor Scribner exceeded his powers in appointing the two trustees and that section 2590-$l$ of the Education Law only authorizes him to supersede the entire Community Board or to do so through a trustee appointed by him and to suspend or remove the entire board or any member or members thereof. On the other hand, the respondents question the standing of the petitioners to bring this proceeding. They also contend that Chancellor Scribner's action was within the scope of the authority vested in him by section 2590-$l$ of the Education Law.

In our opinion, the petitioners have such standing and respondent Scribner's action falls within the permissive purview of section 2590-$l$.

The petitioners, as parents of children attending schools within Community School District 1, are entitled to vote for candidates for the Community Board in the general election (Education Law, § 2590-c, subd. 3). Since the stated purpose of decentralization is to give members of the community a greater voice in the running of the schools, it may not be gainsaid that the petitioners are aggrieved by this Community Board's inability to take any action with respect to school district affairs or by any action on the part of an administrator, which, if unlawful, may frustrate such stated purpose of decentralization.

(See *Matter of Strippoli* v. *Bickal,* 42 Misc 2d 475, 480–484, revd. on other grounds 21 A D 2d 365, affd. 16 N Y 2d 652.)

Moreover, since the petitioners' interests may not be foreclosed in any proceeding to which they are not parties, they may not be precluded from pursuing their remedy independently of the remedy of appeal to the Commissioner of Education sought by the members of the Community Board, which remedy is not available to the petitioners. Accordingly, we conclude that the petitioners may well be deemed to have standing in a proceeding such as the one at bar.

With respect to the action taken by Chancellor Scribner, we are of the opinion that his authority to do so stems from the following provisions of section 2590-*l* of the Education Law:

"1. If, in the judgment of the chancellor any community board fails to comply with any applicable provisions of law, by-laws, rules or regulations, directives and agreements, and after efforts at conciliation with such community board have failed, he may issue an order requiring the community board to cease its improper conduct or to take required action and consistent with the provisions of this article and the educational and operational policies of the city board, may enforce that order by the use of appropriate means, including:

" (a) supersession of the community board by the chancellor or a trustee appointed by him with respect to those powers and duties of such community board deemed necessary to ensure compliance with the order; and

" (b) suspension or removal of the community board or any member or members thereof."

In our opinion, the action taken by Chancellor Scribner, after his efforts at reconciling the differences between the members of the Community Board had failed, was reasonably calculated to effect by " appropriate means " enforcement of his order that the Community Board cease its improper conduct of stagnation and inactivity and " take required action " so as to permit it to function and carry out all applicable directives and agreements consistent with the educational and operational policies of the City Board.

We construe the use of the word " including ", after the words " appropriate means ", as reflecting the legislative intent to expand the means which may be utilized to those of " supersession " and " suspension " of the entire Community Board as provided in subdivisions (a) and (b) and not to limit the means to the use of these express means. To construe it otherwise would be to attribute to the Legislature an intent to permit

the Chancellor to supersede or suspend the entire Community Board but preclude him from resorting to the less disruptive course of action which he took. This, we believe, would hardly be in keeping with the stated purpose of the concept of decentralization as heretofore noted.

The minority takes the position, *inter alia,* that the broad power of supersession (which we deem to warrant the less extreme measures taken by Chancellor Scribner) must be construed as applying only to orders relating specifically to the administration of the School District and the functions of the Community Board in that regard. Certainly, if compliance with such specific orders is enforceable by supersession, it follows that such power is applicable where the effective administration of the School District is frustrated and the Community Board's functions are completely at a standstill so that no orders may be complied with.

We also do not subscribe to the dim view taken by the minority that a determination upholding Chancellor Scribner's action would result in emasculation of the right and power of the local citizens to elect a Community Board of their own choice and would only intensify the polarization and consequent chaos which presently reigns in School District 1. If anything, complete supersession, suggested by the minority as a possible remedy more in compliance with the letter and spirit of the law, would be more likely to bring about such an undesirable result. Not only is the action taken by the Chancellor and approved in this majority opinion less disruptive than total supersession, as heretofore noted, but the risk of such an end result is substantially reduced when the power of appointment herein approved is exercised by one having the administrative expertise of a Chancellor of the Board of Education with his attendant familiarity with the problems of the community involved.

Moreover, we do not consider section 43 of the Public Officers Law (which provides for the temporary filling of a vacancy by the Governor until it is filled by an election and to which the minority alludes as a possible solution) applicable to this case. In our opinion, the condition therein imposed — that there be no provision of law for filling the same — renders that section inapplicable to the situation at bar where, in accordance with our stated views herein and the specific statutory provisions hereinbefore referred to, provisions for filling the vacancies do exist.

Finally, while the minority correctly points out that, pursuant to subdivision 5 of section 42 of the Public Officers Law, the

Governor *may* in his discretion "make proclamation of a special election" to fill vacancies in a situation such as the one at bar, we consider this suggested procedure an extreme and expensive one which should only be pursued as a last resort after the procedure adopted by the Chancellor, herein recognized as duly authorized, or the alternative procedure of complete supersession or suspension of the Community Board by the Chancellor, shall have failed to achieve a desirable and palatable result. In our opinion, to readily invoke subdivision 5 of section 42 of the Public Officers Law without reservation and to initiate a special election whenever a situation such as the one at bar arises or recurs would constitute an indiscriminate imposition of responsibility on the Governor to intervene in local community affairs and an unnecessary and unreasonable imposition of an economic burden upon the State or municipality chargeable therewith and upon the electorate participating in such an election. Since recurrences of similar situations are highly probable in this district as well as in others where volatile issues arise in the administration of the decentralization concept, the disastrous consequences of extending to each such community the privilege of a special election are obvious. This even further fortifies our conviction that our construction of section 2590-*l* of the Education Law and of the legislative intent reflected therein as authorizing the action taken by Chancellor Scribner is correct.

Accordingly, we conclude that the order of Special Term should be affirmed, without costs.

BENJAMIN, J. (dissenting). I agree with the majority's conclusion that the petitioners have standing to bring this proceeding; I disagree with its conclusion that Chancellor Scribner had the power to appoint two trustees to vote with the seven remaining elected members of the Community Board to fill the two vacancies on the board. In a situation like the one at bar, I believe the vacancies must be filled by a special election ordered by the Governor; or, alternatively, the Chancellor must remove the entire present board for misconduct and the Governor must then appoint a temporary board to run the school district until a new board is elected at a special election ordered by the Governor.

Nowhere in the school decentralization act (Education Law, art. 52-A) is the Chancellor given the power to fill a vacancy in a Community Board. That power is vested solely in the Community Board itself (Education Law, § 2590-c, subd. [34], par. b). What the Chancellor cannot do directly, he cannot

do indirectly. Yet the filling of these vacancies with people of his own choice is precisely what would be accomplished by his designation of two trustees to vote with the seven elected members, since those two trustees would create a majority for either of the bitterly contending factions that they would choose to side with. And, of course, the two new members thus chosen would create a permanent majority that would run the school district for the balance of the board's term. In short, then, the Chancellor would, by the order here under attack, himself effectively fill the vacancies and create the governing majority of a Community Board which, by law, must be chosen by the people in the district. Such result would emasculate the right and power of the local citizens to elect a board of their own choice for the conduct of their own school district and can only intensify the polarization and consequent chaos that now reigns there.

The fact that the Chancellor may not do what he has here done does not mean that there is no remedy for the intolerable situation that now exists in this school district. Members of the Community Board clearly are public officers (Public Officers Law, § 2). Paragraph b of subdivision (34) of section 2590-c of the Education Law gives the board the power to fill any vacancy in its body. Subdivision 5 of section 42 of the Public Officers Law provides: "Whenever the authority to fill any vacancy is vested in a board and such board is unable to fill such vacancy in an elective office by reason of a tie vote, or such board neglects to fill such vacancy for any other reason, the governor may, in his discretion, make proclamation of a special election to fill the vacancy."

Clearly, these statutes provide an appropriate, lawful remedy for the situation now existing in this school district. And that remedy is a special election, called by the Governor, to fill the two vacancies on the board. That procedure, unlike the unlawful one followed by the Chancellor, would not only comply with the letter of the law but would also carry out its plain intent to leave the choice of the elected officials in the hands of the people.

There is still another possible remedy for this situation that would comply with the letter and spirit of the law. If, as is suggested in this record, the immobilization of this board is due solely to racial and ethnic considerations, rather than honest differences of opinion as to what may be best for the children who are its wards, this may well be deemed misconduct warranting removal of the entire board (see Education Law,

§ 2590-*l*). Liberally construed, section 42 of the Public Officers Law would seem to provide the appropriate means of filling the "vacancy" created by the removal of the entire board, namely, a special election ordered by the Governor. If section 42 be deemed inapplicable, section 43 of that same law would come into play, since there appears to be no other statutory provision for the replacement of a removed community board. Section 43 provides: "If a vacancy shall occur * * * with no provision of law for filling the same, if the office be elective, the governor shall appoint a person to execute the duties thereof until the vacancy shall be filled by an election. But if the term of such officer shall expire with the calendar year in which the appointment shall be made * * * the appointee shall hold for the residue of the term." Hence, if the entire board were removed by the Chancellor for misconduct, section 43 apparently would require the Governor to appoint a temporary replacement board, to serve until a new board is elected at a special election. [The appointees could not serve out the full unexpired terms of the removed board members because their terms run until June 30, 1973.]

The majority suggests that the Chancellor's broad power to supersede the board and exercise its powers to ensure compliance with an order made by him (Education Law, § 2590-*l*, subd. 1, par. [a]) necessarily includes a lesser power to appoint temporary trustees to ensure compliance with his order to elect two new members to fill the existing vacancies. I do not agree. That broad power of supersession must be construed as applying only to orders relating specifically to the administration of the school district and the functions of the board in that regard. It cannot be construed as empowering the Chancellor to usurp the right of the people to choose their elected representatives, either directly by an election, or indirectly by the act of their elected representatives in filling a vacancy in their number.

In sum, I believe the Chancellor lacked the power to appoint two trustees to vote with the remaining elected members for the filling of the two vacancies on the board. He is given no such power by article 52-A of the Education Law or by any other statute; and his attempt to exercise it violates the plain intendment of that statute to vest control of community school districts in community boards chosen by the electorate in the respective districts. The vacancies here existing can and must be filled pursuant to the procedure outlined in section 42 of the Public Officers Law; or, alternatively, the existing situation can be

cured by removal of the entire board, followed by appropriate action by the Governor under either sections 42 or 43 of the Public Officers Law.

Therefore, the judgment should be reversed and the petition to annul the Chancellor's determination granted.

RABIN, P. J., MARTUSCELLO and LATHAM, JJ., concur in *Per Curiam* opinion; BENJAMIN, J., dissents and votes to reverse the judgment and annul the Chancellor's determination, with an opinion, in which MUNDER, J., concurs.

Judgment of the Supreme Court, Kings County, entered March 21, 1972, affirmed, without costs.