Karen Wilutis Informal Opinion Town Attorney No. 2005-19 Town of Brookhaven One Independence Hill Farmingville, New York 11738
Dear Ms. Wilutis:
You have requested an opinion regarding the ability of the town to enact a local law that would eliminate the town board's power to fill vacancies by appointment in elective offices, a power granted by Town Law § 64(5), and instead grant that power to the eligible voters of the town by requiring a special election[1] to fill a vacancy. We are of the opinion that the town may enact such a local law.
Pursuant to Town Law § 64(5), the town board has the power to appoint a qualified person to fill a vacancy in an elective town office. Under the Municipal Home Rule Law, the town may amend or supersede any provision of the Town Law relating to any area in which the town is authorized by Municipal Home Rule Law § 10 to enact a local law, unless the Legislature has expressly prohibited such an amendment or supersession. Municipal Home Rule Law § 10(1)(ii)(d)(3). This power to supersede provides a town with the flexibility to create a form of government that meets local needs. See Kamhi v. Town of Yorktown, 74 N.Y.2d 423,430 (1989). We are not aware of any statutory provision by which the Legislature has expressly prohibited the supersession of Town Law § 64(5). Cf. Municipal Home Rule Law § 10(1)(ii)(d)(3) (town generally may not supersede state statutes relating to improvement districts, creation or alteration of areas of taxation, authorization or abolition of mandatory or permissive referendum, or town finances as provided in article 8 of the Town Law). The question therefore is whether the town is authorized to enact a local law requiring a special election in the event of a vacancy in an elective office.
A town is authorized to adopt local laws relating to its property, affairs, or government that are not inconsistent with the provisions of the Constitution or with any general law. N.Y. Const. Art. IX, § 2(c); Municipal Home Rule Law § 10(1)(i). A town is also authorized to adopt local laws relating to the mode of selection of its officers that are not inconsistent with the provisions of the Constitution or with any general law, except to the extent that the Legislature restricts the adoption of such a local law relating to other than the property, affairs, or government of the town. N.Y. Const. Art. IX, § 2(c)(1); Municipal Home Rule Law § 10(1)(ii)(a)(1).
We believe that a local law requiring that a special election be held to fill a vacancy in an elective office relates to the mode of selection of the town officers or, alternatively, the government of the town. See Resnick v. County of Ulster,44 N.Y.2d 279, 286 (1978) (under home rule provisions, municipalities historically were accorded great autonomy in experimenting with the manner in which their local officers were to be chosen, predicated either on the "mode of selection" provision or their power to manage their "property, affairs or government"); Bareham v. City of Rochester, 246 N.Y. 140, 146
(1927) (the term "mode of selection" in the home rule law expresses an intent to allow a city to determine that it shall cause its officers to be either elected or appointed). We note that while the Constitution mandates that the Legislature provide for filling vacancies in office, see N.Y. Const. Art. XIII, § 3, this has been determined to not grant the Legislature exclusive authority to legislate in this area. See Resnick,44 N.Y.2d at 288. In fact, the Court of Appeals has concluded that if an inconsistency exists between Article XIII and the subsequently — adopted Article IX provision that "[a]ll officers of local government whose election or appointment is not provided for by this constitution shall be elected by the people of the local government, or of some division thereof, or appointed by such officers of the local government as may be provided by law," N.Y. Const. Art. IX, § 1(b), Article IX controls. Resnick,44 N.Y.2d at 288. Therefore, the town may enact a local law superseding Town Law § 64(5) unless such a local law would be inconsistent with a general law.[2]
You have suggested that the proposed law might be inconsistent with Public Officers Law § 42(5) because it would divest the Governor of authority granted to him by this section, which provides that
 [w]henever the authority to fill any vacancy is vested in a board and such board is unable to fill such vacancy in an elective office by reason of a tie vote, or such board neglects [to] fill such vacancy for any other reason, the governor may, in his discretion, make proclamation of a special election to fill the vacancy.
We believe, however, that a local law eliminating the town board's power of appointment and requiring special elections in the event of a vacancy in an elective office can be viewed as consistent with section 42(5) of the Public Officers Law. Section 42(5) only becomes applicable under certain circumstances: first, the authority to fill a vacancy must reside in a board, and second, that board must be unable to fill a vacancy by reason of a tie vote or must otherwise neglect to fill the vacancy. The town board already has the ability to remove the possibility of the Governor's intervention in filling local vacancies by making sure that the second criterion is not met. The proposed local law would simply remove the possibility of the first criterion being met.
Moreover, local laws that eliminated the possibility of the Governor's involvement in filling vacancies in local offices have been upheld by the Court of Appeals. At issue in Nydick v.Suffolk County Legislature, 81 Misc.2d 786 (Sup.Ct.), aff'd,47 A.D.2d 241 (2d Dep't), aff'd, 36 N.Y.2d 951 (1975), was a provision of a county charter that rendered County Law § 400(7), granting the Governor the power to fill by appointment a vacancy in an elective county office, inapplicable to the county; instead, under the county charter, the county legislature was authorized to fill a vacancy occurring in the office of county legislator. The lower court held that the county was authorized to enact this charter provision, 81 Misc.2d at 791, a decision that was affirmed by the Appellate Division, 47 A.D.2d at 243, and the Court of Appeals, 36 N.Y.2d at 951.
Following the Nydick decision, the Court of Appeals upheld local laws in two non-charter counties that provided that a vacancy in the office of county legislator would be filled by appointment by the county legislature. Resnick, 44 N.Y.2d 279. Again, one of the challenges to the laws was that the power to appoint to fill these vacancies rested with the Governor. Id. at 283; see also Rebeor v. Wilcox, 58 A.D.2d 186, 190 (4th Dep't 1977), aff'd, 44 N.Y.2d 279 (1978) ("Nydick must stand for the proposition that any other proper provision of law, whether local law or charter provision, which determines the mode of filling county legislative vacancies, bars gubernatorial appointment to such vacancies under Public Officers Law § 43").[3] The Court concluded that a county was authorized to enact such a local law by virtue of the constitutional and statutory provisions granting municipal home rule, including the provisions of Article IX regarding the mode of selection of officers and the property, affairs, and government of the municipality. 44 N.Y.2d at 286,288-89.[4]
Nor does the proposed law appear to be inconsistent with the Election Law, which would govern the conduct of a special election called pursuant to the proposed law. See Election Law §1-102 (Election Law governs the conduct of all elections at which voters of the state of New York may cast a ballot for the purpose of nominating or electing an individual to any town office). The proposed law does not propose an alternative method of conducting the special elections, but appears to require compliance with the Election Law.
We therefore come to the question of whether a municipality is for some other reason prohibited from calling a special election to elect municipal officers in the way, for example, a municipality may not conduct a referendum in the absence of specific statutory authorization to do so. See McCabe v.Voorhis, 243 N.Y. 401, 413 (1926). The prohibition against calling a referendum without statutory authorization is based on the understanding that "[g]overnment by representation is still the rule" and "[d]irect action by the people is the exception." Id. This analysis, however, does not apply to the election of officers to fill vacancies in elective offices. First, the Court in McCabe was clearly referring to referenda, rather than special elections to fill vacancies: "The power to provide for a referendum must be found in the City Home Rule Act. Otherwise it is unauthorized. Direct legislation in cities must always rest on some constitutional or statutory grant of power." Id. at 413. Furthermore, the policy of the State with respect to vacancies in elective office has long been to fill them by election at as early a time as practicable. See Roher v. Dinkins,32 N.Y.2d 180, 188 (1973); In re Mitchell, 219 N.Y. 242, 248 (1916). Election of representative local officers is the rule rather than the exception. See 1915 Op. Att'y Gen. 451, 454 ("Provisions for special elections, such as those contained in section 292 of the Election Law, rather than appointments to elective offices, are measures such as would be expected in a government by representative officers. Election is the fundamental method. Appointments are used only in emergencies, and simply to fill elective offices in instances where the filling of the office cannot safely await the movement of elective processes.") Therefore, we believe that the prohibition against calling a referendum in the absence of specific statutory authority does not similarly restrict the calling of special elections to elect officers to fill vacancies in elective offices.
Indeed, in 1995, the Legislature recognized that special elections need not be called by the Governor and amended several provisions of the Election Law that suggested otherwise. Act of June 28, 1995, ch. 88, 1995 N.Y. Laws 2595. In discussing the then-proposed amendments to the Election Law, it was recognized that
 [w]hile local legislative bodies have long had the power to call special elections to vote on propositions, special elections to fill vacancies in office were typically the prerogative of the Governor. Public Officers Law § 42 is a vestige of that time. Today, there are many instances in which special elections to fill vacancies are held at the call of the local government.
Memorandum of Michael E. Stafford, Counsel to the Secretary of State, to Michael C. Finnegan, Counsel to the Governor, June 21, 1995, reprinted in Bill Jacket to 1995 ch. 88, at page 8; see also Memorandum of State Board of Elections to Michael C. Finnegan, Counsel to the Governor, June 22, 1995, reprinted in
Bill Jacket to 1995 ch. 88, at page 9 ("Public Officers Law, section 42 refers only to special elections called by the governor. Several local jurisdictions, including Westchester County, have adopted local procedures for calling special elections at the local level"). This amendment to the Election Law indicates knowledge by the state government that municipalities were exercising the ability to call special elections. While the municipalities that we know have enacted a provision authorizing the holding of a special election to fill a vacancy in an elective office are counties and cities, see, e.g., Suffolk County Charter § 2-6; Dutchess County Charter § 2.13; New York City Charter §§ 10, 24, 25, 81; Yonkers City Charter § 3-4, Resnick establishes that the authority to adopt a scheme for the filling of vacancy in a local office stems from constitutional and statutory home rule provisions applicable to all municipalities. 44 N.Y.2d at 287-88.
Having concluded that the town board may adopt a local law requiring a special election when an elective office is vacant, we note some drawbacks of such a requirement. A special election held to fill a vacancy, unlike special elections held for other purposes, see, e.g., Op. Att'y Gen. (Inf.) 58 (for a special election on a proposition, town may designate fewer polling places than are required for general election), will be subject to the Election Law, see Election Law § 1-102, and will thus involve essentially the same expense as a general election. See Mercado v. Scribner, 38 A.D.2d 444, 449 (2d Dep't), aff'd,30 N.Y.2d 811 (1972) (to initiate a special election to fill every vacancy on an elective board would constitute "an unnecessary and unreasonable imposition of an economic burden upon the State or municipality chargeable therewith and upon the electorate participating in such an election"); cf. Resnick,44 N.Y.2d at 285-86
(while the "idea that local officials should be chosen by local constituencies is one with deep roots in our democratic polity," challenged local laws "focus[ed] on how these officers are to be chosen for interim periods when it is not practicable to refer the matter to the voters"). Furthermore, there will be a period of time between the vacancy occurring and the special election, likely one of at least a couple of months, during which the town will not be operating with a full complement of officers.
Finally, we note that the proposed local law would be subject to referendum. A local law is subject to mandatory referendum if it abolishes, transfers or curtails any power of an elective officer. Municipal Home Rule Law § 23(2)(f). The proposed local law requiring a special election to fill a vacancy in an elective office would constitute a curtailment of the board's power to appoint to fill a vacancy in an elective office. Cf. Op. Att'y Gen. (Inf.) No. 96-18 (local law making mayor's appointment power subject to consent of common council was curtailment of mayor's power requiring submission of local law to referendum). The local law must also comply with Municipal Home Rule Law § 22, which requires the designation of the state statute it is amending or superseding.
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD, Assistant Solicitor General
In Charge of Opinions
[1] A "special election" is any election that is not a biennial town election. Biennial town elections are held on the Tuesday following the first Monday in November in odd-numbered years. Town Law § 80. A special election may be called for eligible voters to vote upon a proposition, see, e.g., Town Law § 81, or to have the municipality's electors approve local legislation by referendum,see, e.g., Municipal Home Rule Law §§ 23 and 24, or to elect officers to fill vacancies in elective office, see, e.g.,
Public Officers Law § 42(3) and (5).
[2] For municipal home rule purposes, a "general law" is, in relevant part, a state statute which in terms and in effect applies alike to all towns. Municipal Home Rule Law § 2(5).
[3] Public Officers Law § 43 provides that "[i]f a vacancy shall occur, otherwise than by expiration of term, with no provision of law for filling the same, if the office be elective, the governor shall appoint a person to execute the duties thereof until the vacancy shall be filled by an election."
[4] The local law may be superseded by an inconsistent state law if filling a particular vacancy constitutes a matter of state concern. See Carey v. Oswego Co. Legislature, 91 A.D.2d 62
(3d Dep't), aff'd, 59 N.Y.2d 847 (1983) (County Law § 400(7), authorizing the Governor to appoint to fill a vacancy in a county elective office, superseded inconsistent county law where vacancy was in office of district attorney); see also 1977 Op. Att'y Gen. (Inf.) 158 and 1974 Op. Att'y Gen. (Inf.) 218 (citing N.Y. Const. Art. VI, § 17(d) and Municipal Home Rule Law § 11(1) as authority for the conclusion that a village may not amend a state statute relating to the term, method of selection, and method of filling vacancies of a village justice).